Evans v. King.

MAY TERM.
1842.

Evans
v.
King.

1. Suit commenced by attachment, without personal service.   The defendant appeared and moved to quash the attachment.   Held, to be such an appearance to the action as authorised a general judgment, and a general execution thereon.

2. When property of the defendant attached in the hands of a third person, is retained by giving bond and security for the forth coming of the property, (according to the provisions of the 14th section of the attachment law, R. S. 1835, p. 78,) the attachment continues to be a lien on the property.

Appeal from the St. Louis Circuit Court.

Geyer for Appellant.

King for Appellee.

*Opinion of the Court, delivered by Napton, Judge.*

This was an action of replevin brought by Evans against King, for a slave.   The judgment of the circuit court was for the appellee, and the facts appearing on the trial were as follows:

The administrator of W. B. King commenced an action by petition in debt against one Charles D. Burriss, on a note for $636.87, and upon his giving the necessary bond and taking the affidavit required by law, an attachment was issued on the 18th of February, 1839.   On the 19th February 1839, the sheriff attached the slave, about which the present suit was brought, and finding him in the possession of one James I. McClelland, he suffered him to remain in his possession, said McClelland having given bond as the law directed for the forthcoming of the property.   The writ was not served upon Burriss.   Afterwards, at the March term, 1839, the defendant appeared and moved to quash the attachment for reasons filed ; which motion was overruled, and at the November term, 1839, a general judgment by *nil dicit* went against Burriss, and a general execution issued, by virtue of which the sheriff levied upon the slave in controversy, the same having been delivered up to him by

said McClelland, and upon the 18th February, 1840, sold him to the appellee.

It was proved on the part of Evans, that this slave was the property of Burriss on the 12th day of June, 1839, and that on that day Burriss sold and delivered the slave to one Dougherty; that in January, 1840, Dougherty sold and delivered said slave to Evans, (the appellant,) and that the appellant hired him to one Robbins, who took possession of the slave, and kept possession until in February, 1840, one McClelland came to his house, and without his knowledge or consent obtained possession of the slave, and delivered him to the sheriff as above stated.

The first question arising in this case is the validity of the judgment and execution. A general judgment is not authorised where there has been no appearance of the party, and the question then arises, whether a motion to quash the writ is such an appearance as will warrant a general judgment. In the case of Whiting and Williams v. Budd, (5 Mo. Rep. 444,) this subject was fully considered, and a motion to dissolve the attachment was held to be such an appearance as authorised the same steps to be taken as if the party had been duly summoned. The case of Lutes and Dulany v. Perkins, (6 M. R. 59,) has been quoted as conflicting with the views of the court in the former case. By reference to this last case, it will be found that this point was neither discussed at the bar nor considered by the court. The court merely held that as one of the defendants in that case had not been served with process, the circuit court erred in giving judgment against him, and the question of *appearance* was not raised at all. It is true, that this question is considered by the reporter as inferential'y decided, because in the statement of the case by the judge, it is said that the *defendants* appeared and moved to dismiss; but I am satisfied that the record in that case would have shown, that only *one* defendant, the one who had been served with process appeared, and the word *defendants* is a clerical or typographical error; at all events, it is clear, that the question of appearance curing the want of service was not alluded to by the court, or at all considered, or intended to be decided.

The motion to quash the writ, then, clearly comes within the principle established in Whiting and Williams v. Budd, and it was such an appearance to the action as authorised a general judgment, and a general execution thereon.

Whether the attachment continues to be a lien on the property attached, after it has been *bonded*, in pursuance of the 14th section of the attachment law is a question which must depend upon the intent of the legislature, as evinced by all the provisions upon this subject. Upon an examination of the entire law, I am satisfied, that the provision for giving a bond and retaining the property, by persons found in its possession, was not intended to divest the lien of the creditor, but was intended chiefly to save expense to the parties, and had in view only such property as could be used without impairing its value.

The terms of the bond require the forthcoming of the specific property, when and where the court shall direct, to abide the judgment of the court. The execution is directed to be levied on the property attached, whether in the hands of the officer or secured by bond. These provisions obviously do not contemplate a disposition of the property thus secured by bond. In addition to these provisions, which certainly tend to show an intention of retaining a lien on the specific property attached, notwithstanding it may be secured by bond, the legislature have provided a mode by which the inconveniences of having this property locked up during the pendency of the suit may be removed by the party who alone has any interest in the matter. The debtor, if he wishes to dispose of the property, can come in and dissolve the attachment; and it is plain, that it was not the design of the law to place a casual possessor or occupant on the same footing, and invest him with the same rights, which they have conceded to the owner. What interest has the bailee of such property, if it be merchandise, and he desires to sell it and convert it into money, in giving a forthcoming bond under this provision of the statute ? What inducement could there be for one, who is not the owner, and can be nowise benefited or injured by any disposition which the law may think proper to make of the property, to retain posses-

MAY TERM, 1842.

Evans.
v,
King.

Suit commenced by attachment, without personal service; the defendant appeared and moved to quash the attachment. Held, to be such an appearance to the action as authorised a general judgment, and a general execution thereon.

Where property of the defendant, attached in the hands of a third person, is retained by giving bond and security for the forthcoming of the property (according to the provisions of the 14th sec. of the attachment law, R. S. 1835, p. 78) the attachment continues to be a lien on the property.

38

sion, except where the property is of a nature which can be used, and is not deteriorated or altered by such use. The provision was not designed to apply to such cases as have been *suggested* by the plaintiff's counsel.

The court is of opinion that the lien on the property attached continues after it has been secured by bond ; consequently an alienation by the defendant after the levy could be of no avail to defeat the title of the purchaser at the sheriff's sale. Judgment affirmed.