CALDWELL et al., appellants, *v.* GANS et al., respondents.

REPLEVIN UNDERTAKING—*sureties*—*return of property.* The sureties in an undertaking in replevin are released from their obligation to return the property, if it is taken by due process of law, without their fault, and held or sold, so that a return is rendered impossible.

REPLEVIN—*possession of property*—*attachment.* The proceedings in replevin give a right to the temporary possession of the property without any title, until the right of possession is tried and determined, and do not impair the lien of an attachment that has been levied on the property.

REPLEVIN UNDERTAKING—*obligation of sureties.* The sureties in an undertaking in replevin must return the property after a judgment has been rendered for such return, if it is in their power so to do; and they are entitled to the property, if they pay the judgment in the suit in which the property has been attached.

REPLEVIN UNDERTAKING—*compliance with*—*condition.* The condition of a replevin undertaking, to return the property, is complied with, if the sheriff acquires possession of the same under a subsequent attachment or execution.

EVIDENCE—*replevin undertaking*—*defense of sureties.* It is not competent for the sureties, in a replevin undertaking, to prove that the owner had no attachable interest in the property, or that the attaching creditor was not injured by their failure to return the same.

*Appeal from the Third District, Lewis and Clarke County.*

THIS case was tried in July, 1871, by a jury, that returned a verdict for Gans. The court, WADE, J., overruled the motion for a new trial. The facts appear in the opinion.

CHUMASERO & CHADWICK, for appellants.

The first ground of defense to this case, that the sureties were released by the sheriff retaking the property upon a second writ of attachment, is untenable. There is no authority in law to sustain such a proposition. Justice would be easily defeated if this is law: The lien of the first attaching creditor is destroyed by the acts of third parties, in replevying and attaching the property, and he is without a remedy. Appellants attached the property of Germain, and Dahler replevied it, by giving a good bond. Clark attaches the same property. Is this a defense to an action on the bond given by respondents for the benefit of appellants? Dahler confessed that he had no action, by dismissing his suit, and was ordered by the court to return the property, so that appellants' judgment in the attachment suit could be satisfied. Dahler replevied the property, after Clark attached it, and held it for months, until it was sold by his orders. Dahler never returned the property to the sheriff, and refused to comply with the order of the court. If it had been returned to the sheriff, it would have been held to satisfy the attachments of appellants and Clark. The position of respondents, that the return of the property was rendered impossible by the act of the sheriff, has no foundation in fact.

The evidence shows that the suit of Clark against Germaine was commenced under the direction of Dahler, to enable him to get the property again into the hands of the sheriff, and delay and prevent appellants from collecting their claim against Germain. The cases of *Clark* v. *Germaine*, and *Dahler* v. *Steele* (the sheriff), were continued from term to term, nearly two years. The law will not benefit a party who resorts to such trickery and chicanery.

The cases of *Hunt* v. *Robinson*, 11 Cal. 262, and *Hayes* v. *Josephi*, 26 id. 535, cited by respondents, are inapplicable to the case at bar. We admit that the decisions are good law.

The sheriff was unable to find the property, after the remittitur in the case of *Dahler* v. *Steele* had been filed in the court below. This would certainly fix the liability of the sureties upon the replevin bond. Dahler, by his acts,

sold the property for his benefit, and placed it beyond his power, or that of the sureties, to return it.

The court erred in admitting the papers, in the case of *Clark* v. *Germain*, and *Dahler* v. *Steele* (second suit). They constitute no defense to this action. The admission of the papers in the case of *Dahler* v. *Germain*, and the report of the sale of the property, was error. They were irrelevant, and calculated to mislead the jury. Hill. on New Trials, 312–315, and cases cited; *Santillan* v. *Moses*, 1 Cal. 93; *Innis* v. *Steamer Senator*, 1 id. 461. This evidence had nothing to do with the defense made by respondents. If the retaking of the property of the sheriff released the sureties on the replevin bond, when such retaking was proved, the defense was made out.

A plea that the title to property replevied was not in the debtor against whom the attachment issued, is bad in an action on the replevin bond, after a determination adverse to the plaintiff in replevin. *Smith* v. *Lisher*, 23 Ind. 500; *Mitchel* v. *Ingram*, 38 Ala. 395.

The appellants were not made parties to the suit of *Dahler* v. *Germain*, for the foreclosure of Dahler's mortgage. They were not bound by the decree therein, and the introduction thereof, as evidence, was error.

The court erred in its instructions. The question of the power of the sheriff to return the property had nothing to do with the case. If the property had been returned, the sureties in both replevin cases would have been relieved, and the judgments of appellants and Clark could have been satisfied by the sheriff.

The court had no right to modify instructions that were law and applicable to the evidence. *Conrad* v. *Lindley*, 2 Cal. 173; *Russell* v. *Amador*, 3 id. 402; *Jamson* v. *Quivey*, 5 id. 491.

The property was not in the possession of the coroner for Dahler as held by the court. Civ. Prac. Act, § 104.

SHOBER & LOWRY and E. W. TOOLE, for respondents.

When the property came again into the hands of the

sheriff, as appears by the evidence in this case, the condition of the replevin bond to return the property was fulfilled. *Hunt* v. *Robinson,* 11 Cal. 262.

After the replevin suit had been dismissed, it left the parties to settle the question as to the value of the property and the right of possession, on the undertaking in the case. *Mills* v. *Gleason,* 21 Cal. 280. The question as to who had the actual possession of the property was properly submitted to the jury.

The undertaking was given to the sheriff (Steele) as if he was a trespasser in the case. What right had appellants to bring this suit in their names? It is not alleged that Steele was the trustee of an express trust, and there is no assignment of the bond.

If the sheriff retook the property and let it go again, he must look to the second bond; the first is discharged. *Hunt* v. *Robinson,* 11 Cal. 262; *Hayes* v. *Josephi,* 26 id. 535; *Curiac* v. *Packard,* 29 id. 198.

The complaint is defective in alleging that the property was held by the sheriff for appellants and other creditors. Respondents' demurrer should have been sustained.

Dahler dismissed his first replevin suit because the sheriff retook the property and had it in his possession.

WADE, C. J. This is an action on a replevin bond, and the cause comes into this court on appeal from a judgment for defendants in the court below.

A statement of the facts, as shown by the record, will be necessary to a correct understanding of the case.

On the 29th day of January, 1870, the plaintiffs commenced a suit in attachment against one Germain, and levied upon certain personal property belonging to Germain, which at that time was in the possession of one Dahler, by virtue of a mortgage by Germain to Dahler, July 1, 1869.

On the 3d day of February, 1870, four days after the plaintiffs' attachment, Dahler commenced his action against

Steele, sheriff, and replevied the attached property, and herein the undertaking or bond in replevin was given upon which this suit is instituted. In this action such proceed-ings were had as that, on the 15th day of March, 1870, the action was dismissed, and judgment for the return of the property duly given; but prior to this, and while the action was still pending, to wit, on the 12th day of March, 1870, the property was again attached at the suit of one Clarke against Germain, and taken into the possession of Steele, sheriff, and upon the same day was again replevied by Dahler. On the 23d day of March, 1870, these plaintiffs recovered a judgment against Germain for the amount of their claim, upon which execution was issued and returned unsatisfied, and on the 27th day of January, 1871, they bring their action against these defendants, who were and are sureties upon the bond in replevin in the first suit of Dahler against Steele, sheriff, and on the 22d day of July, 1870, Dahler forecloses his mortgage and procures a decree to sell the property covered by his mort-gage, which is the same property levied upon by plaintiff's attachment, and replevied by Dahler, and again attached by Clarke; and, in pursuance of such decree, the sheriff takes possession of the property and sells the same, realiz-ing therefrom an amount insufficient to satisfy said decree.

Upon this state of facts, are these defendants liable upon their undertaking?

The condition of the undertaking or bond of defendants is "for the prosecution of the said action for the return of said property to said defendant, if return thereof be ad-judged, and for the payment to said defendant of such sum as may, from any cause, be recovered against the plaintiff."

The action of Dahler against Steele, sheriff, was dismissed, and judgment for return of the property duly rendered, and return was not made, and thereby the condition of the undertaking was broken, but prior to the judg-ment of return, and while the property was in posses-sion of Dahler, by virtue of the undertaking of defend-ants, it was attached at the suit of Clarke, and thereby

came again into the possession of Steele, sheriff, defendant in the suit of claimant. This attachment of Clarke, by virtue of which the property was taken from the possession and control of claimant and his sureties, rendered it impossible for the sureties to perform the judgment for a return of the property. By reason of a lawful process issued from the court the property is placed beyond the reach of the claimant and his sureties, and without any fault or neglect on their part, and by operation of law, the property is taken beyond their control.

Does this inability of the sureties to perform the judgment of return, relieve and release them from liability upon their undertaking?

At the time the proceedings in replevin were instituted, and the undertaking given, the property was in the custody of the law. The sheriff held it by virtue of plaintiffs' attachment, and for the plaintiffs, and it will be necessary to inquire into the nature and extent of plaintiffs' lien under this process.

If plaintiffs' lien upon the property continued in full force and operation notwithstanding the proceedings and undertaking in replevin, and their rights were not thereby injured or impaired, and if, after judgment of return in the replevin suit, the property was subject to their control as against defendants, and if Clarke acquired no rights by virtue of his attachment except subject to the rights of the plaintiffs, then to hold that the sureties are still liable upon the undertaking would place the means in the hands of plaintiffs to collect their debt twice, once from the property attached, and once from these defendants upon their undertaking for if the lien of the attachment continues, and thereby subjects the property to the control of plaintiffs, they could immediately possess themselves of the property, and by the very act of obtaining possession would cause a forfeiture of the bond, so that by securing their debt from the property they create a liability against defendants by which they are again entitled to collect their debt.

The theory upon which the sureties are held upon their

undertaking, after a judgment for return of the property, and default thereon is, that they have the property in their possession or under their control, and that they have the power to return it. If the sureties pay the judgment they are entitled to the property. The law gives them the property for the judgment. And their liability comes from the fact that having the property they prefer to keep it and pay the value thereof. But if plaintiffs' lien continues on the property after judgment of return is given, and they thereby have the right to control it to the exclusion of the sureties, and it is placed beyond their reach by authority of the law, then to render judgment against them would produce this result: the plaintiffs would have the property whereby their debt is secured, and also a judgment for its value whereby it is secured again, while the sureties, instead of having the property as they are supposed to have as a compensation for the judgment for its value, would be entirely without remedy, and this injustice would follow: That plaintiffs would collect their debt twice, and once from innocent parties who have received no consideration therefor and who have been guilty of no neglect in the premises.

The law will not thus lend its aid to rob one person that another may receive twice what belongs to him, and the result of this case must turn upon these questions:

1. Did plaintiff's lien, by virtue of his attachment, continue, notwithstanding the proceedings in replevin? and,

2. The property coming again to the possession of the sheriff by virtue of Clarke's attachment, and thereby being placed beyond the power of sureties to return the same, does not such inability of the sureties, and such possession of the sheriff, fulfill the condition of the undertaking to return the property?

As applicable to the foregoing questions, we think the following propositions can be maintained:

1. The possession of goods in replevin by virtue of the undertaking is a temporary possession, and continues only until the right of possession has been tried and settled. If, after giving the undertaking, the plaintiff should sell the

property, the purchaser would acquire only the title of the plaintiff, which might be no title at all. The plaintiff could sell only the title he possesses, and that title depends upon the result of the trial. If it were true that, by giving the undertaking, the title to the property was thereby transferred, then it would follow that the plaintiff could sell and convey a complete title; but this cannot be the case, for the reason that the undertaking contemplates *a return of the property* if judgment of return be given, and a sale before judgment would defeat the very purpose of the suit. The object of the action is the *specific property* in question, and judgment for the value is only given *when the property cannot be reached.*

2. If the undertaking carries with it the title, the property would be subject to levy, execution and sale, and thereby the primary object of the suit, *the property itself*, would be defeated. And if the property is subject to execution and sale, the law would thereby authorize the means whereby a return of the property would be rendered impossible, and the discharge of the undertaking would be defeated, and yet the sureties would be subject to a penalty for failing to perform it.

Upon this subject we adopt the language of Justice McLEAN in *Hogan* v. *Lucas*, 10 Pet. 400, and say : "If the property be liable to execution, a levy must always produce a forfeiture of the condition of the bond, for a levy takes the property out of the possession of the claimant and renders the performance of the bond impossible. Can a result so repugnant to equity and propriety as this be sustained? Is the law so inconsistent as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time exact a penalty for the forfeiture? This would, indeed, be a reproach to the law and to justice."

This theory would give the property to a party confessedly in the wrong, and authorize him to convert it to his own use at pleasure, while he could only be held to account

for its value. The law does not give any such privilege to a wrong-doer.

3. If the undertaking in replevin gives only a temporary right to the possession of the property, and does not carry with it the title, then the lien of the attachment is not disturbed or impaired, and, after judgment of return, the attachment controls the property. And, if subsequent attachments or executions should be levied upon the property during the pendency of the proceedings in replevin, or afterward, such attachments or executions would be subject to the lien of the first attachment; and if the property, by virtue of such second execution or attachment, should come again to the possession of the sheriff, the condition of the replevin bond to return the property is fulfilled.

4. If after the undertaking in replevin is given, the property is again taken by due process of law, and held or sold, and thereby a return is rendered impossible, this fact would discharge the obligation of the sureties to return the property.

In support of the foregoing propositions we cite the following authorities : *Hunt* v. *Robinson*, 11 Cal. 262 ; *Buckle* v. *Luce*, 1 Comst. 171 ; *Lockwood* v. *Perry*, 9 Metc. 444 ; *McRea* v. *McLean*, 3 Porter, 138 ; *Evans* v. *King*, 7 Mo. 411 ; *Hogan* v. *Lucas*, 10 Pet. 400 ; Drake on Attach., §§ 290, 299, 303.

Suppose that the sheriff, by virtue of an execution, levies upon the property of A and advertises the same for sale ; B claiming the property replevins it, causes an undertaking to be given and obtains possession of the property. The suit in replevin results in favor of the defendant, and judgment for return is given, and immediately the sheriff, by virtue of his execution, repossesses himself of the property, thereby placing it beyond the power of B or his sureties to perform the judgment of return, and thereby creating a breach of the undertaking. Can it be contended that the execution creditor could thus secure the property and, by his own act, cause a forfeiture of the undertaking, and at

the same time have a remedy against the sureties for breach of their bond? Or in the case supposed, if there was a second execution upon the property, during the pendency of the proceedings in replevin, whereby the property came into the possession of the sheriff and was sold, and by operation of law was placed beyond the reach of the sureties or claimant, could it be claimed that the sureties would be held for a return of the property when the law had made such return impossible?

Both reason and authorities fully warrant us in saying that the law does not thus stultify itself, and we say that the lien of attachment continues unimpaired during the proceedings in replevin, and when the same property came again into the hands of the sheriff, by virtue of subsequent attachments or executions, the condition of the undertaking in replevin to return the property was fulfilled and the sureties discharged.

In the case of *Hunt* v. *Robinson*, 11 Cal. 262, this view is fully maintained. In that case Treadwell commenced a suit against David Jones by attachment, which was levied upon certain personal property by the plaintiff, Hunt, as sheriff. Mary Jones, wife of David Jones, claimed the property as sole trader, and commenced her action of replevin, and obtained possession of the property upon giving an undertaking in replevin with these defendants as sureties. The replevin suit was decided on the 5th day of February, 1855, in favor of Hunt, and a motion made for a new trial by Mrs. Jones, which was overruled on the 9th of March, 1855. Treadwell obtained judgment against David Jones November 30, 1854. On the 18th of February, 1855, certain executions in favor of *other* creditors of David Jones being in the hands of Hunt, plaintiff, were levied upon the same property, and the property sold about the 1st of February. The sheriff being in doubt as to which of the several creditors were entitled to the proceeds of the sale, paid the money into court, and filed his bill of interpleader, making the creditors parties. Upon the hearing the court decided that the second class of creditors were entitled to

the proceeds. From this decision there was no appeal. On the 17th day of March, 1855, Hunt issued an execution upon the judgment obtained by him in the replevin suit, which was returned unsatisfied. The sheriff, then brought his suit against the sureties in the replevin bond and obtained a judgment against them for the assessed value of the property replevied, and the defendants appealed.

In many important particulars this case is parallel to the one at bar. In this case the property is attached, it is then replevied, and during the pendency of the suit in replevin, the same property is taken upon execution in favor of *other* creditors of Jones and sold, by reason of which subsequent execution and sale, the property comes again to the possession of the sheriff, and is placed beyond the reach of the sureties to perform the judgment of return. In the case at bar the property is attached by Caldwell and Ingram. It is then replevied by Dahler, and during the pendency of the suit in replevin, the same property is attached by Clarke, and comes again to the possession of the sheriff, and is subsequently sold by virtue of Dahler's mortgage, and the sureties are, by virtue of said subsequent attachment and sale, prevented from performing the judgment of return. In both cases there was a judgment for return of the property, and in either case the sureties in the undertaking were prevented from making return by subsequent levies in attachment or execution upon the same property.

In the case referred to (*Hunt* v. *Robinson*), the court make an elaborate and exhaustive examination of the authorities, and reverse the judgment against the sureties, for the reason, that when the property came again to the possession of the sheriff, by virtue of the subsequent executions, the condition of the replevin bond to return the property was fulfilled, and for the further reason, that to hold otherwise, would impose upon the party replevying the property the extraordinary risk of having to pay the judgment, and also to lose the property.

We adopt this view, and say : That according to every principle of law and practice, if the sureties in the under-

taking in replevin are compelled to pay the value of the property, they are entitled to the property itself. But it is conceded that they cannot get the property, that having been taken from them and sold by virtue of subsequent executions, and if a judgment should be rendered against them for the value of the property, they would be compelled to pay for what they never enjoyed, and this without any fault or neglect on their part, and purely by operation of law over which they had no control.

Again : If a judgment is rendered against these sureties, this result must follow : Germain who is justly indebted to these plaintiffs, and against whom they have obtained a judgment, would be enabled to pay the judgment without parting with any of his property, while these sureties would be compelled to pay for what the law had taken from them, and for which they have not received any benefit, and thus the defendant in attachment or execution obtains two prices for his property. "This, indeed, would be a reproach to law and justice."

But the theory that the replevin of Dahler does not destroy the lien of Caldwell and Ingram's attachment does justice to all the parties. Clarke's attachment is subject thereto, and is a subsequent lien, and the property coming again into the possession of the sheriff, the lien of plaintiffs as well as that of Clarke is preserved ; the plaintiffs are placed in the same position as before the replevin suit, the property is in the hands of the sheriff, the lien of plaintiffs is unimpaired, and the only damage plaintiffs could have suffered would have been the detention of the property from the date of plaintiffs' suit to the date of Clarke's, which was but a few days, and the damage to the plaintiffs for this detention from the sheriff could be only nominal in any event.

5. The record shows that Dahler foreclosed his mortgage against Germain and procured a decree and order of sale, and that, by virtue of such proceedings, the sheriff sold the property in question, and applied the proceeds thereof to satisfy said decree. These proceedings demonstrate the fact

that plaintiffs obtained no possible interest in the property attached, and that they were not in any manner injured by the replevin of the property by Dahler, and that Germain had no attachable interest in the property. This proof is incompetent in a suit against sureties upon a replevin bond. Neither in such a case would it be competent to show the property in the plaintiff in replevin, or that he was a part owner therein, or that the property belonged to a stranger. The obligation of the sureties in the undertaking is to return the property if judgment of return be awarded, and they are not relieved from this obligation by showing that the attaching creditor is not injured by their failure to return the property. Title is not the subject of inquiry in such a suit. But the record in the case of Dahler against Germain shows, that after the plaintiffs' attachment, and after the undertaking in replevin was given, the property was again taken by process of the law and sold, and that its return was thereby made impossible. This proof shows that the property came again to the possession of the sheriff, and as we hold that such possession fulfills the condition of the undertaking to return the property, this testimony showing such return was properly admitted and received in evidence. And the only damage that could result to the plaintiffs would be the difference between the sheriff holding the property for Dahler, and Dahler holding it for himself.

But Clarke's attachment is conclusive of the case. It brings the property again to the possession of the sheriff, and thus fulfills the condition of the undertaking. It is idle to say that because Dahler immediately replevied the property after Clarke's attachment, and thereby obtained possession, it was in the power of his sureties in the first replevin suit to perform the judgment of return. The levy of the attachment just as effectually takes the property beyond the reach of the sureties, as if it had been sold on execution. And when the property is delivered to Dahler by virtue of the second suit in replevin, a second undertaking with sureties is given for the return of the property, and it cannot be taken by the first sureties without injuring the rights

of the second sureties. Other rights have intervened that cannot be impaired. And suppose the second sureties held a mortgage upon the property for their security, which they had a right to take and hold, or that they had possession of the property for the same purpose, by what right could the first sureties take it from them? Their equities are equal and the law would not permit them to interfere with the property to the injury of the second sureties.

Then if the property did come to Dahler's possession, and was so in his possession when the judgment of return was given, it was so incumbered with the rights of other parties that had accrued since the making of the first undertaking that a return thereof was impossible, and this impossibility resulted from the operation of law, and over which the sureties had no control.

Suppose the second suit had been dismissed and judgment for a return of the property rendered, or suppose a trial had resulted in such a judgment, but in the mean time the property had been taken by the first sureties, by what principle of right or law shall the second sureties lose the property and be made to pay its value for the benefit of the first sureties?

The only reasonable road out of these difficulties is to say that the attachment of Clarke, and the second undertaking in replevin, places the property beyond the power of the sureties to perform the judgment of return, and this discharges the bond.

The instructions to the jury in the court below were in conformity with the views herein expressed, and we find no error therein.

*The judgment of the court below is affirmed.*