## BLUE BIRD MINING COMPANY (LIMITED), APPELLANT, v. MURRAY ET AL., RESPONDENTS.

ORDER FOR INSPECTION AND SURVEY — *Equity jurisdiction — Injunction — Judicial discretion.* — In the case at bar the plaintiff, in following its vein in the dip and beyond the side lines of its claim, had been working within the limits of defendants' claims. An injunction had been granted restraining the defendants from working upon the mining claim of plaintiff, and afterwards an order was granted upon defendants' motion, permitting them to prosecute certain specified work within the boundaries of their own claim under certain restrictions and the control of the court, for the purpose of obtaining evidence for the trial of the case, and the ascertainment and determination of the rights of the parties, and the continuity and identity of the veins in question, and to prosecute development and other work pending the litigation. *Held*, that the granting of the order was within the equity powers of the District Court, and being in effect an order for an inspection and survey for the discovery of the truth, was not an abuse of judicial discretion. (Case of *St. Louis M. & M. Co.* v. *Mont. Co. ante*, p. 288, affirmed.)

INJUNCTION — *Appealable orders — Bills of exception.* — An order which modifies, and thereby partially dissolves an injunction, is appealable, and may be reviewed upon the papers used on the hearing in the court below properly certified, and no bill of exceptions is necessary. (Cases of *Granite Mountain M. Co.* v. *Weinstein*, 7 Mont. 346; *Vaughn* v. *Dawes*, 7 Mont. 360, affirmed.)

INJUNCTION. — The granting or refusal of an injunction is a matter of discretion in the court below. (Cases of *Nelson* v. *O'Neal*, 1 Mont. 284; *Atchison* v. *Peterson*, 1 Mont. 570, cited.)

*Appeal from Second Judicial District, Silver Bow County.*

The order modifying the injunction was granted by Mc-HATTON, J.

*M. Kirkpatrick*, and *John F. Forbis*, for Appellant.

We are at a loss to name the order made, and from which the appeal is taken. It certainly is not an order dissolving an injunction, nor so far as we can understand it, an order that has any reference to the granting or dissolution of an injunction. However, as it was granted in a proceeding in which an injunction had been previously granted, we surmise that it is claimed to be an order modifying the injunction. That the order is unprecedented, we may assert, we think, from the fact that there is no record of any such order having ever been granted before. We take the position that the judge had no power to make the order; that it is absolutely without authority of law, and therefore void; that it was made in violation of every principle that underlies the right of the enjoyment of one's property; that possession of

property is a right in itself, and that the court or judge was abso-
lutely without power to dispossess one without a due process of
law, which means a final judgment; and that if he had no power
to dispossess one, he has no power to order another one into the
possession, or to order one to share his possession with another.
The plaintiff is within the limits of the defendants' ground; that
is not disputed, but it claims that it has a right there; that where
it has worked it has a right to be, and as a necessary consequence
that the defendants have no right to be.   And yet, notwithstand-
ing the facts, the court ordered the defendants to be let into the
plaintiff's possession, not for inspection only, but that the defend-
ants might continue the work which plaintiff has begun.   This
was done upon an *ex parte* hearing, and we claim altogether erro-
neously.   We contend that to sustain this order would be to
deprive the plaintiff of its property, and summarily, and with-
out reason or justice, to compel the plaintiff to put its improve-
ments and entire outlay at the disposal of the defendants, in
order that defendants might use them, if they might be so used,
to defeat the very ends for which plaintiff intended them.
Defendants contend that they only ask for a right of way, and
this they say the law of Congress gives them.   But we contend
that the law of Congress gives to no one the right of way through
another's works, to use and occupy the same.   We do not object
to the defendants having a right of way wherever they may
wish through the Blue Bird vein, but we certainly do insist that
they have no right to monopolize, or even share the workings
made by this plaintiff, until they can obtain a judgment of a
competent court giving them such right.   And the order herein
appealed from is not such a judgment.   As we have said, there
are no adjudications upon a question like the one in this case.
However, as we conceive, a like principle is decided in *Brennan*
v. *Gaston,* 17 Cal. 375.

*William Scallon,* for Respondents.

Respondents contend that the order is not an appealable one.
The right of appeal is regulated by sections 421 and 444 of the
Code of Civil Procedure.   No appeal lies unless allowed by the
Code.   (*Rader* v. *Nottingham,* 2 Mont. 157.)   The order in ques-

tion is not one of those mentioned in the sections. Appellant's counsel say they cannot name the order. If not, it cannot be one of those named in the sections cited. If the order were appealable, the court could not entertain the appeal, because there was no bill of exceptions in the case, and no certificate identifying the papers used, and therefore, nothing properly can come before the court on which it can legally pass. The motion appears to have been based on affidavits, maps, etc., and on pleadings and orders in another case, produced on the hearing, but not part of the files or record of this suit. A bill of exceptions was therefore necessary. There is no proper certificate or anything else to identify the papers used below, or the grounds upon which the court acted. (*Barber* v. *Briscoe*, 8 Mont. 214.) The order was not made *ex parte*, but after full hearing of all parties. The court has jurisdiction — complete jurisdiction and control over the ground. In each case there is an equitable action for an injunction joined to a legal one and an injunction granted. Appellant contends that the order deprives it of its property. It admits that it was inside of defendants' lines, but claims to be following a vein downward. As if a mere claim made a right! The presumption of law is that the defendants own everything inside of their lines until the contrary be shown. *Prima facie*, appellant is a trespasser. (*Cheesman* v. *Shreve*, 37 Fed. Rep. 36.) Appellant misstates respondents' position. The intention is not to "continue work which appellant has begun," but to do development work, which the appellant is not doing and does not intend to do, so far as known. No interference would be had with appellant's system of development so as to prevent it from carrying it out. The improvements and outlay of appellant are not put at the disposal of respondents. The latter simply get the right of way through the openings — some in the contested territory or vein, and some in the uncontested territory, the country rock, all in defendants' lines. The principles underlying the order are: That the law requires the best evidence; that the court in this instance has already control over the property; that where a showing is made that work to be done in the disputed territory will disclose the facts and the truth, and particularly where the existence of controlling facts is asserted and denied, and it appears that the question can be

determined by the doing of work, courts, and especially courts of equity, having jurisdiction and control over the ground, have the power, and ought to order such work done; and on principle and in fact, such order does not differ from an order for inspection, with right to remove obstructions and make new openings. Precedents of such orders are found in the following cases: *Stockbridge Iron Co.* v. *Cone Iron Works,* 102 Mass. 80; *Thornburgh* v. *Savage Min. Co.* 7 Morrison Min. Rep. 667; *Earl of Lonsdale* v. *Curwen,* 3 Bligh, 168; 7 Morrison Min. Rep. 693; *Bennett* v. *Griffiths,* 30 Law J. Q. B. 98; 7 Morrison Min. Rep. 26. Bainbridge on Mines and Minerals, page 512, states that "such an order was obtained to enable persons to repair and ventilate the mine in order to see the extent of coal taken." Now we submit that if such orders are proper to determine the quantity of minerals taken, they are more so where the purpose is to ascertain the very right to the minerals. But appellant claims such an order is absolutely void. Once the abstract power admitted, the time, manner, and conditions are questions of judicial discretion. The case cited by appellant is not in point. There was an attempt to oust a party *absolutely* and compel him to deliver possession by an *ex parte* order of a judge at chambers, not for the purpose of the preparation of the case, but *absolutely.* Here the order is merely for leave to do certain work, under the control and reserved supervision of the court, to prepare for trial.

BLAKE, C. J.—The Blue Bird Mining Company (Limited) is a corporation, organized under the laws of the Territory of Montana, and owns the Blue Bird Lode Mining Claim, which is situated in the county of Silver Bow. Murray *et al.* own, or possess as lessees, the Darling, Little Darling, and Lena K. Lode Mining claims, which are south of and, viewed as a whole, adjoin the property of the company. It is conceded that the company, asserting the right to follow its vein in the dip and beyond the side lines of the Blue Bird Lode Mining Claim as located, has been working at places which are within the limits of the claims of Murray *et al.* It is maintained by Murray *et al.* that this under-ground development is not upon the property of the company, and the parties have resorted to the courts for legal and equitable relief. At the commencement of the action

of the company against Murray *et al.*, the court granted an injunction, enjoining Murray *et al.* from working upon the Blue Bird Lode Mining Claim, and afterwards, upon a hearing, ordered that the same be continued in force pending the litigation. A motion was then filed by Murray *et al.*, and supported by affidavits, applying for permission to prosecute certain work, and after a hearing an order was made March 29, 1890, which is before us for review.

The application alleges that "it is necessary to the preparation of this case for trial, and to the ascertainment and determination of the exact rights of the parties, and to the continuity and identity of the veins in question in this case, or the absence thereof, to prosecute development work, and particularly work hereinafter mentioned; and . . . . an injunction has heretofore been issued in this case against the defendants; and . . . . the plaintiff has refused its consent to the prosecution of the work hereinafter mentioned." Accurate descriptions are given of the cross-cuts, shafts, winzes, lagging, and levels, which are to be the subjects of further labor, and the object thereof is distinctly pointed out. While the general nature of this development has been stated in the application, some definite specifications are cited to show the reasons for this order. "*Fourth.* To run east on the level known as the two-hundred-foot level of the Little Darling to the east end line of the claim, through the openings made by the Blue Bird Company, and particularly the floor or drift known as the Foley drift, thus named after the man who last worked there for the Blue Bird Company. (The intention is here to extend said drift beyond the point where the Blue Bird Company left off, in order to determine whether or not any vein shows beyond said point.) . . . . *Sixth.* To open up the lagging which now closes up the connection made by the Blue Bird Company between levels Nos. 4 and 5, and which connection is made from the winze last mentioned, and an incline from the bottom thereof, and a raise from the five-hundred-foot level. (This being a connection or cross-cut recently made by the Blue Bird Company, and immediately lagged up by it, so that these defendants had no opportunity to examine the same; and the importance of which is shown in the affidavits filed in support thereof.)"

The conditions which are set forth in the order appealed from should be considered. " *Provided, however,* that all of the above-described work shall be done by the said defendants, at their own cost; and all dirt, debris, and ores shall be raised through their own shaft, except that, if the plaintiff so desires, it may itself take, raise, and hold, until the final determination of this suit, any ores which may be extracted from the vein shown on No. 4 level, or from any vein which may be encountered north thereof, or from the winze on No. 4 level. And except, also, that if plaintiff desires it, the opening of the lagging in the connection between levels No. 4 and No. 5 may be done by plaintiff, or under plaintiff's supervision ; *provided,* full liberty be allowed defendants to examine the same; and *provided, further,* that in the examination of said cross-cut connection between levels 4 and 5, and the cross-cut from No. 4 south, nothing more be done than is necessary for the examination thereof, and the ascertainment of the nature of the ground, or the formation through which the same are run; that if these matters can be determined without the removal or opening of any of the timbering, or by digging in the bottom thereof, then it shall be done accordingly. And it is further ordered that, for the purpose of doing the foregoing work and inspection, the defendants, and all persons employed by them, have a right of way through any openings, levels, and cross-cuts made by the Blue Bird Company within the lines of the Little Darling Claim. . . . . And *provided, also,* that the work, and particularly the inspection, shall be done in such a manner as not to endanger any of the present workings or openings; and that said connection between levels 4 and 5 and the cross-cut south from the Blue Bird shaft shall be left or replaced in the same condition that the same now are or may be at the time immediately prior to the inspection; and it is *further provided,* that any and all work done by the defendants by virtue hereof must be done in good workmanlike and mine fashion, and timbered in best mining fashion ; and that these defendants, or such thereof as shall cause said work to be done, shall be in no manner relieved from liability for the doing of said work, or the manner in which it is done by this order; but that the same liability shall attach to them on account of such work as would

attach if done without this order, in case the ground or veins in which the same may be done be found or determined to belong to the plaintiff; and it is *also further provided,* that, in order to prevent any collision or interference between cars or other instruments of transportation of the ores or debris, that the defendants shall furnish, at their own expense, all necessary signal-men to warn the men employed by either party of the approach of cars, etc.; and the court reserves jurisdiction over the matter of this order for the purpose of seeing that it is carried out according to its spirit, and in proper manner; and *provided, further,* that nothing in this order contained shall authorize the defendants, or any of them, to go outside of the boundaries of their own claims."

The respondents move to dismiss this appeal for the following reasons, to wit: "(1) That this court has no jurisdiction of the appeal or case. (2) That the order sought to be appealed from is not appealable. (3) That no exception was taken, or appears to have been taken to said order, and that there is no bill of exceptions thereto in the record, and that none was taken or filed, or appears to have been taken or filed."

The notice of appeal states that the plaintiff appeals "from the order made and entered in the above-entitled cause . . . . whereby said judge, upon the application of the defendants, modified the injunction granted in this case against the defendants, and permitted defendants to prosecute certain work in the workings of plaintiff, and from the whole and every part of said order."

The Code of Civil Procedure provides that "an appeal may be taken . . . . from an order to grant or dissolve an injunction" (§ 421), and "from an order granting or dissolving an injunction." (§ 444.) The order of injunction obtained by the appellant restrained Murray *et al.* from working upon the property, which it described as the Blue Bird Lode Mining Claim. The court in making the order under examination modified and thereby partially dissolved the original injunction by authorizing work within certain restrictions to be done. In *Hunt* v. *Steese,* 75 Cal. 626, the court says: "Motions for injunction are regularly heard upon complaint, answer, and affidavits, and no bill of exceptions is necessary, unless it be to identify the papers

used on the hearing in the court below." The provisions of the Code of Civil Procedure of this State are similar to those of the Code of California, and we have adhered to the same rule. (*Granite M. M. Co.* v. *Weinstein,* 7 Mont. 346; *Vaughn* v. *Dawes,* 7 Mont. 360.) The necessary papers have been properly certified, and the motion to dismiss the appeal must be overruled. (See, also, *Hefflon* v. *Bowers,* 72 Cal. 270.)

The contention of the appellant is that the court had no authority to make the order; that it is unprecedented, and deprives the Blue Bird Mining Company (Limited) of the possession of its property, without due process of law. The counsel for the appellant in their brief say: "The plaintiff is within the limits of the defendants' ground; that is not disputed, but it claims it has a right there; that where it has worked it has a right to be, and as a necessary consequence that the defendants have no right to be." How does this concession affect the relations of the parties? In *Cheesman* v. *Shreve,* 37 Fed. Rep. 36, Mr. Justice Brewer says: "These defendants are entering beneath the surface, within the side lines of ground patented to complainants, and seeking to mine and take ore therefrom. *Prima facie* they are trespassers. They justify this entrance under authority of the laws of the United States, and especially section 2322 of the Revised Statutes, which give to the owner of a vein, lode, or ledge, the top or apex of which lies within the surface lines of his own location, the right to follow that vein downward, outside of the side lines of his location, and into territory whose surface belongs to another. . . . . So the defendants are entering within the side lines of complainant's property. *Prima facie* they are trespassers; and where the affidavits, upon an application for a preliminary injunction, are conflicting, the rule is to preserve the possession as against such *prima facie* trespassers by a preliminary injunction, leaving the question of title to the property to be established by a suit at law."

The granting or refusal of an injunction is a matter of discretion in the court below, and this rule was recognized at an early period in the courts of Montana. (*Nelson* v. *O'Neal,* 1 Mont. 284; *Atchison* v. *Peterson,* 1 Mont. 570; *Hicks* v. *Michael,* 15 Cal. 107; *Hicks* v. *Compton,* 18 Cal. 206; *De Godey* v. *Godey,* 39 Cal. 167; *Rogers* v. *Tennant,* 45 Cal. 186; *Hiller* v. *Collins,*

63 Cal. 238.) The question to be decided is whether there has been an abuse of judicial discretion.

In *St. Louis M. & M. Co.* v. *Montana Company (Limited)*, *ante*, p. 288, this court reviewed the English and American authorities upon the right of parties interested in mines to have an inspection and survey under the laws of the State. We arrived at the conclusion that the source of these statutory provisions was the chancery practice of England, and, avoiding repetition, we will say that most of the cases cited in the opinion relate to orders which were made by virtue of equitable jurisdiction. Under the Constitution, " the District Courts shall have original jurisdiction in all cases at law and in equity, including all cases which involve the title or right of possession of real property. . . . ." (Art. viii. § 11.) Independent of the statute upon the subject, we think that the court below, by virtue of its equity powers, could authorize the inspection and survey of the premises in controversy upon the motion of any party to the action. It was also maintained in *St. Louis M. & M. Co.* v. *Montana Company (Limited)*, that the object of these proceedings was to obtain the best evidence for the trial, and that no constitutional rights of the owner of the property to be viewed had been infringed, although there would be an interference with its possession. The appellant admits that it is willing that the respondents shall have all the privileges essential to an inspection and survey of its vein and works, but denies the power of the court to allow any work to be done thereon. The books seem to be destitute of precedents. The court is preserving the property pending the litigation, and the sole purpose of the order permitting any development by the respondents is to ascertain the facts, if possible. The appellant, according to *Cheesman* v. *Shreve, supra*, is *prima facie* a trespasser, and therefore the respondents are *prima facie* in the rightful occupancy of the levels, shafts, winzes, and cross-cuts, which are described. The respondents submit with their brief certified copies of five orders, which have been made in controversies relating to lode mining claims by the Circuit Court of the United States for the District of Colorado. They contain all the features of which the appellant complains as obnoxious. Viewing the order as the best means of discovering the truth, and having the practi-

cal effect of an inspection and survey, and considering the actual condition of the property, we are unable to hold that the court below has abused its discretion.

It is therefore adjudged that the order be affirmed with costs.

HARWOOD, J., and DE WITT, J., concur.