Hurlbut, J.,
rendered the opinion of the court.
November 21, 1912, plaintiff Curry (plaintiff in error) instituted an action against defendants, The Equitable Surety Company and The F. A. Trinkle Automobile Company, upon a re-delivery bond previously executed by them in an attachment.suit begun June 14, 1911, hereinafter more particularly referred to. The automobile company filed no pleadings in the case at bar. Judgment was rendered in favor of defendant, The Equitable Surety Company. .
It appears without controversy that on June 14, 1911, said Curry began an action against the said automobile company and R. A. and Julia R. Trinkle, and sued out in aid thereof a writ of attachment which was levied upon certain personal property situated in the City of Denver; that on October 8, 1912, judgment was rendered in said action in favor of plaintiff for the sum of $2822.22, also sustaining the attachment; that on June 19, 1911, the automobile company as principal and The Equitable Surety Company as surety executed a re-delivery bond in accordance with the provisions of the code, whereupon the property attached was released by the sheriff; that subsequently, and on July 27, 1911, said Curry instituted another action against the automobile company, F. A. and Julia R. Trinkle *177 and J. A. Pierce, and also sued out in aid thereof a writ of attachment, under which a levy was made by the sheriff; and that on the following, day the said Pierce, the automobile company and the surety company executed and delivered a re-delivery bond similar to the one hereinbefore mentioned, whereupon thé property attached was again released by the sheriff. This latter action did not' culminate in a judgment, the plaintiff being non-suited at the trial, and the attachment released. Other facts pertinent to the subject-matter, if necessary to be noticed, will be hereinafter mentioned.
The main question presented for determination by the court, and which is decisive of this ¿ppeal, is: Did the mere levy of the writ of attachment issued in the action begun July 27th, upon a portion of the same property previously attached (under the writ issued in the action of June 14th), and resumption of possession thereof by the sheriff, release the defendant surety company in toto or pro tanto from liability under the re-delivery bond which is the subject of this action? We think the record sufficiently shows that the able trial judge disregarded all other questions of law, and considered the issue as stated as controlling all others presented at the trial. If we properly interpret his findings and conclusions, he held as a matter of law that the sheriff, having under the writ of attachment in the action of July 27th re-seized a portion of the property previously attached by him under the former writ of June 14th (the plaintiff here having been plaintiff in both of said actions), thereby released the surety company from liability under the re-delivery bond which is the subject of controversy in the case at bar. He supports his position by citing a number of authorities, among which we find the case of Schneider v. Wallingford, 4 Colo. App., 150, 34 Pac., 1109. There is a marked distinction between some of the facts of that case and those of the case at bar. There the sureties upon the re-delivery bond were private indi *178 viduals, not engaged in the surety business for profit, as in the case before us. No -second re-delivery bond appears to have been executed in the subsequent actions in that case, nor re-delivery of the property to defendant, as was done in the case at bar. It does not appear from that opinion what disposition was made by the sheriff of the property attached in the subsequent actions, but it is shown that the defendant sureties in that suit áttempted at the trial to adduce evidence tending to show that the identical goods surrendered to the attachment defendants on the execution of the delivery bond had subsequently come into the possession of the officer who levied the original writ. The trial court rejected the proofs so offered by defendants and gave a directed verdict for plaintiff. The court of appeals held such ruling to be reversible error, following and citing with approval the case of Stevenson v. Palmer, 14 Colo., 565, 24 Pac., 5, 20 Am. St., 295, which latter case held that the execution of a re-delivery bond and surrender of property thereunder did not destroy the lien of the attachment. In the Wallingford case it was said, in substance, that the lien could not be divested by a sale of the property by the attachment debtor, nor seizure and disposition of it by an officer under process; that the lien continued until judgment, and if the plaintiff’s claim culminated in a judgment and execution for its enforcement, the property would still be treated as in the custody of the law, and subject to the original attachment lien; and, further, that if after surrender of the property to the defendant, under -the redelivery bond, the officer re-seized the goods under subsequent writ of attachment or execution, it thereby became subject to'disposition under the prior attachment lien, which had been acquired by the levy thereunder, and the officer was charged with the duty of applying the proceeds of sale thereof to the satisfaction of such lien. The court further said:
*179 “What the evidence might have shown concerning the disposition of this property, and whether the plaintiff would have been able to overcome the proof, which tended to show that possession of the goods, had re-passed to the sheriff, to whom the creditor was bound to look for his money, cannot be determined from the present record. It is quite possible that the evidence on this subject may seriously affect the relations and rights of the judgment creditor, the officer and these sureties. According to the case as made, however, sufficient of these goods re-passed into the officer’s possession to satisfy Wallingford’s claim. Should the ultimate proof establish this fact to the satisfaction of the jury trying the case, and the evidence show that the goods were sold.by the officer, or otherwise so disposed of that they were lost to the defendant and the judgment creditor, the legal effect must be to satisfy the debt and to compel the creditor to look to the officer alone for the satisfaction of his claim.”
It is conceded in the instant case that under the second writ of attachment the sheriff- re-seized sufficient property, formerly attached, to have paid the judgment obtained in the first case, although plaintiff contends that the attachment of the property under the writ of July 27th was against his consent, and in violation of his instructions. The point of difference between counsel, as to the force and effect of the Wallingford case, is clearly defined. Defendant contends that as the sheriff, under the writ of July 27th, re-seized sufficient property antecedently attached to pay the- judgment, such levy ipso facto discharged the surety company from liability under, the -re-delivery bond we are now considering; while plaintiff insists with zeal that such re-seizure by the sheriff did not as a matter of law release the surety as claimed, but at the most established only a prima facie case for the surety company, and that such prima facie case could be overcome by plaintiff, through the introduction of proof showing that the sheriff did not sell *180 the property so re-seized, or otherwise dispose of it, so as to render it unavailable to the plaintiff creditor or defendant surety, or that plaintiff was not instrumental in any way in preventing the sheriff from satisfying the first attachment out of the proceeds arising from the sale under the second seizure. After a careful analysis of the Walling-ford case, we are of the impression that it does not support in its entirety the contention of defendant, but rather tends to support that of plaintiff, as regards the point discussed. That part of the opinion quoted permits of a strong presumption that it was not the intention of the court to lay down the rule that a mere second levy upon property by a sheriff, antecedently levied upon by him in a former suit, ipso facto discharges the surety from liability under a redelivery bond given in the first suit, but, rather, that in order to have such effect, it must also be shown that the sheriff either sold the property under the second levy or otherwise so disposed of it that it was lost to the plaintiff creditor and defendant surety, or that the plaintiff was chargeable with acts which prevented the application of the proceeds to the liquidation of the judgment, pro tanto, or acts which deprived the surety of possession or control of the property after the second levy had been made. In each and every case cited by the trial judge in his findings and conclusions (which we will next consider) it was shown that the property was either sold by the sheriff or disposed of by him in such a way as to become lost to the defendant surety or plaintiff creditor, or that plaintiff was directly responsible for depriving the surety of his legal rights in the premises, viz.:
In Caldwell et al. v. Gans et al., 1 Mont., 570, it appears that personal property was taken from the possession of the sureties, in a replevin bond, by the sheriff, under lawful process, and, without any fault on their part, sold by the sheriff, thereby making it impossible for them to re-deliver the property in accordance with their covenant in the bond.
*181 In Jaeger v. Stoelting, 30 Ind., 341, plaintiff attached property which was subsequently recovered under a replevin bond. Two judgments were thereafter recovered against plaintiff in attachment actions at the suit of other creditors of plaintiff; executions issued, levies made thereunder, and the property sold -by the sheriff, with the direction and consent of plaintiff, all of which rendered it impossible for the sheriff to re-deliver the property under his bond.
In Hagan v. Lucas, 35 U. S. (10 Pet.), 400, 9 L. Ed., 470, the controversy arose over an alleged right of a United States marshal to levy upon and take possession of property, under a writ issued from the United States Court, which property had been previously levied upon by a sheriff of the State of Alabama and delivered by him to one who had given a forthcoming bond to the sheriff under a statute of that state, to try the title to the property. The point under discussion here does not seem to have been directly involved in that cáse. The court said, in part:
“The principal question in this case is'whether the slaves referred to were liable to be taken in execution by the marshal, under the circumstances of the case.”
In Dunlap v. Clements et al., 18 Ala., 778, the plaintiff Dunlap, after attaching certain property, and after the same had been replevined by the defendant Clements, sued out another attachment against one of the sureties in the replevin bond, and caused the same to be sold in the second attachment suit. In that case plaintiff by his own act prevented the surety from delivering the goods that were taken in the second attachment.
In M’Rae v. M’Lean, 3 Porter (Ala.), 138, the surety requested the sheriff to hold the property which he had taken under a second writ of attachment and apply the proceeds of its sale to the satisfaction of the first attachment, but instead of doing so the sheriff delivered the property to a stranger, who removed it from the state. It will be observed that the surety, instead of having the property *182 re-delivered to his principal (as in the case at bar), protested against the sheriff delivering it to anyone, but insisted upon his right to have the sheriff retain and sell the property to satisfy the first attachment.
In Scarborough v. Malone et al., 67 Ala., 570, the action was brought against a sheriff upon his official bond, without including the sureties. The breach of the bond, as alleged, consisted in the sheriff levying upon property with knowledge that it had been previously levied upon by his predecessor in office, and that he turned the property over to the plaintiffs in the attachment suit, who removed the same beyond the limits of the state. The gist of the decision was that the sheriff, without fault of plaintiffs, was guilty of misfeasance in delivering the goods levied upon to the plaintiffs in the second attachment, who sent it beyond the limits of the state, so it could not be reached and subjected to the prior lien under the first attachment; and, further, by inference at least the opinion recognizes that an attachment upon goods previously attached, when subject to and subordinate to the lien of the prior attachment, is permissible.
Young v. Walker, 12 N. H., 502, was an action in trover for a horse. It was said by the court:
“The plaintiff has seized and sold the horse, so that the defendant could not deliver him, and now brings his suit because the defendant has not done that which the plaintiff has rendered it impossible for him to do, and which he might have done had it not been for the act of the plaintiff.”
In Rood v. Scott et al., 5 Vt., 263, the plaintiff (deputy sheriff) brought the action against his bailees for not returning to him upon demand a yoke of oxen which had previously been put in possession of the bailees, and receipt taken therefor. The defense was that plaintiff had taken the oxen from defendants, thus preventing them from delivering the same according to their receipt. Plaintiff admits that to be true, but pleads that he so took the oxen *183 under a writ of attachment. The syllabus reads, in part, as follows:
“If an officer take into his custody personal property by writ of- attachment, and a third person receipts the property, and suffers it to go back into the hands of the debtor, the officer by taking the receipt does not part with his lien upon the property. But if the officer takes the same property into his custody by virtue of a second writ of attach-, ment and keeps it from the receipter, this will discharge the receipt.” (Italics ours.)
As said before, the cases to which we have just referred were all cited by the trial judge in his findings and conclusions. They each and all involve facts distinguishable from those of the Wallingford case and the one at bar, in this, to wit:
1. In all those cases, including the Wallingford case, the sureties involved were private individuals, and presumably executed the bonds or undertakings as accommodation to their principals, and received no compensation or profit therefor; while in the instant case the surety is a corporation, organized for the sole purpose of making'profit by and through its execution of this and similar bonds.
2. In all such cases, excluding the Wallingford case, the sheriff or other officer who re-seized or re-possessed the property in subsequent suits or proceedings, after it had formerly been taken into custody under lawful writ or process, either sold the property or delivered it to the plaintiff or third parties, who,' by removing it from the state, or by other acts, prevented the surety from being able to redeliver it under his bond obligation; while in the instant case the property was not sold by the sheriff, but was, within twenty-four hours .after the second levy, released from the sheriff’s custody by the execution and delivery of a second re-delivery .bond. The surety in the re-delivery bond which is the subject of this action was the same surety in the .second re-delivery bond.
*184 3. In those actions, the property levied upon the second time in no instance came again into the posession or under the control or dominion of either the plaintiff creditor, or defendant surety, which fact rendered it impossible for the surety to redeliver the property under the requirement of his bond; while in the instant case the surety within a short period after the second levy executed the second redelivery bond, and the property was released to him and his principal, who, at the time the judgment was rendered against the principal, and at all times thereafter, were able to deliver the property up to the sheriff under the terms of their original delivery bond, and cause the same to be sold by him and the proceeds applied to the satisfaction of the judgment rendered in the action of June 14th.
If the Wallingford case be read and interpreted in the light of the facts therein appearing, we think the ruling therein announced should be confined, as authority, to such facts only, and not extended to include a state of facts similar to those disclosed by the record in the instant case. Undoubtedly the Wallingford case holds that if, after levy by .the sheriff under a subsequent writ, he holds and retains possession of any part of the property previously attached or levied upon under a former writ, for the purpose of satisfying the lien created by the first levy, the surety will be released pro tanto, to the extent of the value of such property ; and further, that the sheriff cannot hold the property under such circumstances, and at the same time call upon the surety to redeliver the same, or, in default thereof, pay its value. It is stare decisis in this state that when property has been lawfully levied upon under proper process, and taken.into possession by a sheriff, the lien thereby created is not affected by any subsequent levy or surrender of possession under a redelivery bond, but, whatever becomes of the property after such levy, it is subject at all times to the lien created by the first levy, and can be followed, pursued and retaken, after judgment in the original case, for the pur *185 pose of being sold, and the proceeds applied to the satisfaction thereof. Stevenson v. Palmer, supra; Chittenden v. Nichols, 31 Colo., 202, 72 Pac., 53. Counsel for defendant, however, urge with ability and force that plaintiff in this case, by his own voluntary act, in commencing the second attachment suit, and causing the writ to be levied upon the same property antecedently attached, thereby made it impossible for the surety company to deliver the property to the sheriff under the requirements of the redelivery bond. Whether or not, as a matter of law, this act of the plaintiff released the defendant surety, depends upon the legal effect to be given to a second levy upon personal property which is already in the custody of the law under lawful levy in a prior action. While there is some conflict in the courts, the general trend of authority permits property already in the custody of the law, under former suits, to be levied upon in subsequent actions. While there is no statute in this state directly authorizing, in terms, subsequent' writs to be levied upon property already in custody of the law under legal process, chapter VI, Mills’ Annotated Code, page 275, seems to recognize the right of any creditor, within thirty days after a writ of attachment has been levied upon property and possession taken by the sheriff, to begin an action against the defendant in the original suit, and file a lien in his favor upon the property so originally attached, thus permitting him to pro-rate with the original plaintiff in the property attached. We do not think, however, it is necessary to decide the point, for the reason that the record shows that at the trial plaintiff made vigorous effort to introduce proof showing that when he began the second attachment-suit, on July 27th, he had no intention of attaching thereunder any property which had been already attached in the action of June 14th, and offered in evidence a letter and written instructions directed to the sheriff before the levy was made, specifically telling him to not levy upon any property previously attached, and informing him that it was not *186 the intention of plaintiff to make any levy upon such property, but that it was his sole intention to have the writ levied exclusively upon property which had come into the possession of the defendant subsequent to the time of the levy of June 14th. The introduction of this proof was objected to by defendant surety, and the objection sustained, to which exception was saved. We believe this ruling of the trial court was error which was prejudicial to the rights of plain- ' tiff, and that the evidence was. proper to be considered by the jury. Had the letter and instructions been admitted, instead of rejected, and had they not been disproved by defendant, the jury would have been warranted in finding, as a matter of fact, that the plaintiff did not intend at any time to have any of the property attached, in that action, which had been levied upon in the action of June 14th, and that as to such property the sheriff acted in violation of the direct instructions of the plaintiff in that regard; hence •the contention made by defendant that plaintiff of his own volition caused the property attached under the writ of June 14th to be again taken into custody of the law, under the writ of July 27th, could not be maintained. It cannot well be denied that a creditor, after judgment or after suing out a writ of attachment, has the right to have the execution or writ of attachment levied upon such property as he may specifically designate, and no other, notwithstanding (as in the present case), the writ instructs the officer to seize and take into his possession all the property of defendant which he may find in his jurisdiction.
Should it be said that sureties are specially favored by the law, which was undoubtedly the case in former times, and before the incorporation of companies for the sole purpose of executing bonds of this character for profit, still, since the formation of such corporations has come into general practice, the modern decisions seem to depart from the . former rule in that regard, and are inclined to hold to a stricter interpretation of surety contracts similar to the *187 present one; and it seems to be the favorite interpretation of such contracts in the present day, by the courts, to hold that such corporations for profit are in effect insurers, and such contracts are construed most strongly in favor of the obligee. In Empire S. S. Co. v. Lindenmeier, 54 Colo., 497, 131 Pac., 437, Ann. Cas., 1914, C. 1189, the court said in part:
“The defendant is a surety company engaged in the business of furnishing surety bonds, and must be considered in the light of the rule of construction as to strictness in such case, differing from' that of individual sureties.
‘Generally speaking, a contract of surety by a surety company is governed by the same rules as the contracts of other sureties, but some distinctions are made by the courts in construing such contracts. The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris, does not apply'where the bond or undertaking is executed upon a consideration, by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves “surety companies,” their business is in all essential particulars that ’of insurers. Their contracts are usually in the terms prescribed by themselves, and should be construed most'strongly in favor of the obligee.’ — 32 Cyc. 306.”
See also Bross v. McNicholas et al., 66 Ore., 42, 133 Pac., 782.
There is another rule of law which seems to be pretty well established at the present day, and that is that sureties for profit, when sued upon bonds or undertakings such as we are now considering, must, in order to establish a defense, be able to show that they have been injured or deprived of some legal right, by or through the action of the sheriff or plaintiff creditor. In Bross v. McNicholas et al., supra, it is said:
' “In this day and age of corporate sureties, when the burden is lightened by the payment of adequate premiums, *188 and their final liabilities ofttimes secured by counter indemnity, the strictness of the old rule is relaxed, and the modern day surety company must show some injury done before they can be absolved from the contracts which they clamor to execute.”
It is said in U. S. F. & G. Co. v. Cochrane, (Wash.), 142 Pac., 687, L. R. A., 1915A, 853.
“The appellant was a compensated corporate surety. It cannot invoke the old rule of strictissimi juri.”
See also U. S. F. & G. Co. v. Pressed Brick Co., 191 U. 416, 48 L. Ed., 242, 24 Sup. Ct., 142, and School District v. M. B. & I. Co., 92 Kans., 53, 142 Pac., 1077.
Applying this rule to the facts in this case, we fail to see wherein the defendant surety company has been in any way injured, or suffered the loss of any legal right to which it was entitled, by reason of any act of the sheriff in handling the property attached, or by reason of any act done by the plaintiff creditor, with respect thereto. The most important right of a surety company in executing a redelivery bond, such as we are now considering, is, through its principal or itself? to retain dominion and control over the property released, to the end that if judgment be recovered in the main action the property may be delivered to the sheriff, to be by him sold and the proceeds applied in satisfaction of the judgment. In the instant case the defendant surety and its principal joined in executing the redelivery bond, and thereby secured the physical possession of the property attached under the writ of July 27th, and at all times thereafter the property remained within their possession and control. The record shows, however, that.the property so attached, or a great part thereof, instead of being preserved and kept intact by the sureties and principal, for the purpose aforesaid, was sold in the usual course of business, by the principal. It is therefore manifest that the surety company and principal were entirely responsible for their inability to turn the property over to the sheriff upon demand *189 after judgment had been obtained in the original case.
• From what has heretofore been said it is evident that we must hold that the mere levy in the subsequent action of July 27th, upon the property antecedently attached in the action of June 14th, without any further showing, did not discharge the surety from liability under the redilevery bond given in the first action; that, in orcjer to have such effect, it must be further shown that the property so reseized was sold by the sheriff or otherwise disposed of by him in such a way as to remove it from the possession or control of the defendant surety or his principal, or it must be shown that the plaintiff creditor was guilty of some act which deprived the defendant surety or its principal of the possession and control thereof.
There are a number of other interesting questions raised in the briefs and ably discussed by the respective counsel, but we are convinced that, however they might be determined, it would not result in affirming the judgment or changing the conclusions already reached upon the main issue heretofore decided.
The judgment is reversed and the cause remanded for new trial.
Cunningham, P. J., not participating.

Reversed and remanded.