BILLIN ET AL. V. HENKEL ET AL.

1. Where the statute of frauds was pleaded to an alleged contract for the sale of goods, and no note or memorandum in writing having been made and subscribed by the parties, and no part of the goods, or the evidence of them, having been accepted and received by the purchaser, nor any part of the purchase money paid at the time of the transaction, *held*, that the contract of sale was within the statute, and void.

2. A void contract, under the statute, may not be rendered valid by performance on the part of one party only; the vendee must not only receive but accept the goods bargained for, in order to pass the title.

3. Before secondary evidence can be given of an instrument in writing, there must be proof of a diligent and *bona fide*, but unsuccessful, search for such instrument in the place where the same belongs, is generally kept, or most likely to be found.

*Appeal from County Court of Pueblo County.*

APPELLEES brought suit in the county court of Pueblo county against the appellants, on an account for goods sold and delivered appellants on the 3d day of May, 1881, amounting to the sum of $221.85.

The answer of the appellees denied the indebtedness, and set up the statute of frauds as to the alleged contract of sale, averring that no note or memorandum of it was in writing; that no part of the goods had been accepted or received by the appellants, and that no part of the purchase money had been paid.

Judgment was given for the appellees in the county court, for the amount of their demand, and also in the district court, on appeal from the judgment of the county court.

It appeared from the evidence that the appellants Billin and Huston called personally at the place of business of the appellees, in Pueblo, for the purpose of purchasing a quantity of coal oil. That appellees were merchants and kept such oil in stock in their warehouse. That after some time spent in negotiations, appellants verbally ordered the shipment to their place of business, at

Poncha Springs, by way of the Denver & Rio Grande Railroad, of twenty barrels of coal oil, of the grade known as "110 test," and for which they agreed to pay the appellees twenty-one cents per gallon.

The oil was put up and delivered to the railway company in good condition on the same day, or next morning, and a bill of lading given therefor to the appellees, specifying that the goods were received for shipment "at the owner's risk."

From evidence admitted against the objections and exceptions of the appellants, it appeared that shortly after the shipment of the oil Henkel & Company wrote a letter to the appellants, requesting payment, and that Mr. Billin, of the latter firm, replied to the effect that his partner, Huston, was then in Denver trying to collect from the railway company damages which the oil had sustained in transit, and that as soon as that was arranged, which would be in a few days, the appellees' bill would be settled.

This letter appears to have been read in evidence on trial in the county court, but having been since lost or mislaid, evidence of its contents was allowed to be introduced on the trial in the district court over objections and exceptions of the appellants, *inter alia*, that the loss of the original had not been proved.

On part of the appellants it was shown that the barrels were leaking badly when the oil reached Poncha Springs; that the members of the appellant firm were absent, having left their book-keeper, Alfred Darrow, in charge, who refused to receive the oil because it was leaking and not in marketable condition.

It was further shown that a Mr. Dunbaugh, a traveling salesman of the appellees, was at Poncha Springs after the arrival of the oil, and that Darrow proposed to him, that if he would haul and place the oil in the storehouse of Billin, Huston & Co., he would store it, and sell it for the appellees on commission. That Dunbaugh

replied that he would telegraph his firm for instructions, and until the same were received he could do nothing. That he did telegraph, and the firm answered to do nothing about the matter, and it does not appear that he took any further action.

The first instruction given by the court at the request of the plaintiffs was as follows:

. *First.* "The court instructs the jury that if they believe, from the evidence, that the defendants, Billin, Huston & Co., purchased from the plaintiffs, Chas. Henkel & Co., twenty barrels of coal oil at the price of $220.85, and directed the plaintiffs to deliver the said coal oil at the depot of the Denver & Rio Grande Railway, at the city of Pueblo, to be shipped to defendants, and that plaintiffs did so deliver the said coal oil in good order, and it was the quality agreed upon, at the said depot as directed by the defendants, and that the defendants have not paid the purchase price thereof, or any part thereof, then they should find for the plaintiffs such sum as you may find from the evidence to be due."

Mr. GEORGE R. ELDER, for appellants.

Messrs. J. Q. RICHMOND and M. B. BRADFORD, for appellees.

BECK, C. J. The statute of frauds being pleaded to the alleged contract for the sale of the oil, and no note or memorandum in writing of the contract having been made and subscribed by the parties, no part of the goods bargained for, or the evidence of some of them, having been accepted and received by the purchasers, nor any part of the purchase money paid at the time of the transaction, the contract of sale was within the statute and void by the express terms thereof when entered into. Gen. Laws, § 1262.

The first instruction given the jury by the court at the request of the appellees, plaintiffs below, was to the effect that full performance by the vendors of the terms and

conditions of the verbal contract of sale on their part to be observed and performed, entitled them to maintain their action and to judgment for the contract price of the goods sold.

If a void contract can be rendered valid by performance on the part of one party only, non-concurred in after performance by the other party, then this instruction is correct.

Such, however, is not the law. To render such contract valid, there must be performance on the part of the vendees as well; that is, they must not only receive, but accept the goods so bargained for.

Counsel for the appellees mistake the law in the first proposition of their brief, viz., that the case is controlled by the rule of law laid down in *Tarling v. Baxter*, 6 Barn. & Cress. 360: "That where there is an immediate sale and nothing remains to be done by the vendor, as between him and the vendee, the property in the thing sold vests in the vendee, and then all the consequences resulting from the vesting of the property follow, one of which is that if it be destroyed the loss falls on the vendee."

This rule has no application to a contract of sale falling within any of the nullifying provisions of the statute of frauds.

Counsel are likewise in error upon their main proposition, on which they rely for an affirmance of the judgment below, that the goods having been delivered to the carrier designated by the purchasers, and being of the quality, quantity and price agreed upon, this delivery was equivalent to an acceptance by the purchasers and vested the property in them.

One of the cases cited in support of the proposition is *Diversy v. Kellogg*, 44 Ill. 114. The nature of the case (but not of the contract, since no question is raised as to its validity) will sufficiently appear from the following extracts from the opinion:

"If appellee shipped, within a reasonable time, the

amount and quality of liquor sold to the appellant, in the manner directed, the property vested in the latter, and it was at his risk from the time it was shipped." * * * " As soon as goods are delivered to a carrier, under a contract of sale, the title vests in the purchaser, subject to stoppage *in transitu*, but with no other lien, unless expressed in the terms of sale." * * * " If it was of a different quality from that purchased, he was not bound to accept it, but might, upon learning its quality, within a reasonable time, give notice that he declined to receive it, and thereby avoid liability."

Several cases can be cited to the same effect, as, for example, *Nichols v. Morse*, 100 Mass. 523, where the doctrine is announced, that in an action for goods sold and delivered, if the plaintiff proves a delivery at the place agreed upon, and that there remains nothing further for him to do, he need not show an acceptance by the defendant to maintain his action.

In none of this class of cases does it appear that any question arose or was considered involving the validity of the contract of sale under the statute of frauds. In cases where this question has arisen, a very different doctrine is announced. Thus in *Johnson v. Cuttle*, 105 Mass. 447, which was an action to recover the price of goods sold and delivered under an oral contract, and wherein it appeared that the plaintiff delivered to a certain carrier the goods ordered, in accordance with the express direction of the defendant, the court held that the price of the goods being more than $50, and there being no memorandum in writing of the contract and no payment of purchase money, proof that defendant accepted and received the goods was required by the statute of frauds to make the contract valid.

The court further held that mere delivery is not sufficient, but there must be unequivocal proof of an acceptance and receipt by the buyer.

In the case before us counsel rely upon the point that

the vendors had done all required of them by the terms of the contract; that the goods shipped by them were of the quality, quantity and price agreed upon; that they were delivered to the carrier designated by the purchasers; that they were shipped in good condition, and that they had not been paid for.

Applied to a valid contract of sale, these allegations, if proven, would entitle the plaintiff to recover the price agreed upon. But that they are insufficient to authorize a recovery in a case like this is illustrated by the case of *Caulkins v. Hellman*, 47 N. Y. 449, which was an action brought to recover the value of a quantity of wine sold upon a verbal contract.

In that case the jury was instructed on the trial below, as a matter of law, "that if they were satisfied that the wine or any portion of it was actually delivered in pursuance of the verbal contract, that circumstance was sufficient to take the contract out of the statute of frauds, and the contract was a valid one and might be enforced, notwithstanding it was not in writing."

In respect to this instruction the court say: "It is evident that the learned judge applied to this case the rule, as to delivery, which would be applicable to a valid written contract of sale, but which is inapplicable where the contract is void by the statute of frauds."

The court held that in case of an oral contract, of the nature specified, there must be not only a delivery of the goods by the vendor, but a receipt and acceptance of them by the vendee, in order to pass title or make the vendee liable for the price, and that this acceptance must be voluntary and unconditional.

As between vendor and vendee, we are of opinion that the weight of authority sustains the foregoing principles. Browne on the Stat. of Frauds (3d ed.), sec. 327 *et seq.;* Benjamin on Sales, secs. 160, 181; 2 Schouler's Personal Property, pp. 485, 486.

The first instruction given by the court, on the prayer

of appellees, being in conflict with the views expressed, is held to be fatally erroneous.

It is also assigned for error that the court permitted the appellees to introduce parol proof of the contents of a certain letter, claimed to have been written them by the appellants, in reply to a letter of the appellees demanding payment of the oil shipped.

One of the objections made on the trial was, that the loss of the original had not been shown.

The rule of law governing the admission of such evidence, as announced by this court in *Bruns v. Clase* (*ante*, p. 225), is that, before secondary evidence can be given of an instrument in writing, there must be proof of a diligent and *bona fide*, but unsuccessful, search for such instrument, in the place where the same belongs, is generally kept, or most likely to be found.

The proof on this application fell far short of these requirements. Although two members of the appellees' firm, Duke and Henkel, were present at the trial and testified as witnesses in their own behalf, only one of them was interrogated as to the loss of this letter. He testified that his firm received the original letter. He was then asked: "Where is that letter?" *Ans.* "On file in the county court office. We had it there on the suits there." *Q.* "By an examination of the records can you find it?" *A.* "I have not been able to so far." *Q.* "That letter was filed in the records in this case?" *A.* "Yes, sir."

T. A. Sloane, sworn for the plaintiffs: *Q.* "State to the jury whether or not this letter has been on file in this case?" *A.* "It has not."

This was all the preliminary proof offered. The witness Duke was then recalled and permitted to testify as to the contents.

While there is no proof that the witness T. A. Sloane occupied any official position in either the county or district court, it is presumed he was clerk of the district

court, as the name of "Theo. A. Sloane" is signed as such to the transcript in this case. If this be true, then the only effect of his testimony is, that the letter was not transmitted to the district court with the papers sent up on the appeal from the county court.

What diligence the witness Duke used, or caused to be used, if any, in the examination of the papers on file in the office of the judge or clerk of the county court, we are not advised.

Again, the letter may have been withdrawn by another member of appellees' firm, by leave, and filed with other business letters in the office of the firm. This being the place where such letters belong, are usually kept, and most likely to be found, in addition to proof of a diligent and unsuccessful search of the papers on file in the county court, there should have been proof of a like search in the office of the appellees; but none whatever appears to have been made.

The evidence does not preclude the possibility of the original being within the knowledge or possession of another member of the appellees' firm; nor was it made to appear that either one of the other two members had made any search at all for it.

The evidence of the contents of this letter having been erroneously admitted, must be treated as though it was not in the case. For this reason, it is not proper for us to say how the issues would have been affected by such testimony.

By reason of the errors noted, and because sufficient evidence of a legal acceptance of the goods, in view of the plea of the statute of frauds, does not appear in the record, the judgment must be reversed.

*Reversed.*