[No. 1303.]

## WILSON v. OTTENBERG ET AL.

1. SALE OF CHATTELS—STATUTE OF FRAUDS.

In a sale of chattels where the price is $50.00 or more, a note or memorandum of the contract must be made in writing and subscribed by the parties to be charged therewith ; or the buyer must accept and receive at least part of the goods ; or he must at the time pay the whole or part of the consideration ; otherwise the contract of sale is void.

2. SAME.

Facts held insufficient to constitute a valid sale of goods under the statute of frauds.

*Appeal from the District Court of Arapahoe County.*

Mr. E. E. EDMONDS, for appellant.

Mr. ROBERT H. LATTA, for appellees.

THOMSON, P. J., delivered the opinion of the court.

S. Ottenberg & Brothers brought replevin against E. H. Wilson, assignee for the benefit of the creditors of the Jas. G. King Cigar Company, a corporation, to recover a quantity of cigars. The cigars had been sold by the plaintiffs to the company, and it had accepted a draft made upon it by the plaintiffs, at four months, for $575, the amount of the purchase price. The plaintiffs claimed the goods by virtue of an alleged resale to them by the company, some two months before the maturity of the acceptance. There was judgment for the plaintiffs, from which the defendant appealed to this court.

The statements of the witnesses, in some of their details, were at variance ; but the testimony given for the plaintiffs, and the undisputed portions of that given for the defendant, disclosed the following facts : On the evening of the 21st day

of November, 1894, Mr. Jacoby, a traveling agent of the plaintiffs, and Mr. Plesner, an attorney for them, called at the company's place of business, and proposed to allow it a liberal discount on its paper if payment could be made at that time. The proposition was not accepted.   Mr. Jacoby then proposed to take back the goods in satisfaction of the plaintiffs' claim ; and Mr. John King, who was in charge of the cigar store at the time, replied that the offer was a liberal one.   This was the only response made to the proposition.   Part of the cigars were in a glass box under the counter, and part were in a showcase on the top of the counter.   Mr. Plesner suggested that the cigars be taken out and placed apart from the other goods of the company.   Mr. King declined compliance with the suggestion.   Mr. Plesner then procured a piece of wrapping paper, and wrote upon it the following words : " All Mountain Rose Cigars in this house, amounting to about 10,000, belong to S. Ottenberg & Company," and requested Mr. King to sign the memorandum, but the latter refused to do so.   The paper was handed to Mr. King who placed it on the cigars, whether on the cigars below the counter, or on those above, does not appear.   Shortly afterwards Mr. King took the paper, folded it up, and put it in a drawer in his desk. The company's acceptance was not produced.   No offer was made to return it to the company, or the company's agent. On the following day the company made a general assignment of its property to the defendant Wilson for the benefit of its creditors.

This suit being for the recovery of specific chattels, it was incumbent upon the plaintiffs to prove title in themselves to the property.   The goods had been sold and delivered by them to the cigar company ; and unless there was a valid re-sale by the company to them they had no title.   The plaintiffs based their whole claim to the goods on what took place between their representatives and Mr. John King, who was apparently acting for the company ; but we are unable to find anything in that, resembling a sale by King to the plaintiffs. When Mr. Jacoby proposed to take the goods in discharge

of the debt, Mr. King said the proposition was liberal; but his remark was not an acceptance of the offer. It was his opinion on the proposition, but it was not an agreement to exchange the goods for the claim which the plaintiffs held against the company. He not only did not agree to sell the goods, but he declined to do anything from which a sale might be legally deduced. He would not consent to a separation of the cigars from the balance of the stock, and he refused to sign a memorandum acknowledging the ownership of the goods in the plaintiffs.

The plaintiffs attach some importance to the placing of the paper containing the memorandum on the top of a portion of the cigars, and argue that it amounted to a setting aside of the cigars for the plaintiffs; but King had refused to let them be set aside, and evidently had no intention that they should be set aside for any purpose. The paper differed from a piece of blank paper only in the writing which was on it, and the writing was of no value because it was unsigned. In view of the facts it is immaterial where the paper was put. The first step in a sale is an agreement of one party to sell, and of the other to buy. When such agreement is reached, if the price of the goods is $50.00 or more, a note or memorandum of the contract must be made in writing, and be subscribed by the parties to be charged therewith; or the buyer must accept and receive at least part of the goods; or he must, at the time, pay the whole or part of the consideration; otherwise the contract of sale is void. General Statutes, sec. 1521; *Billin v. Henkel*, 9 Colo. 394. There was no agreement to sell, so that the first requisite of a sale never had an existence. But the price offered for the goods was more than $50.00, and even if there had been an agreement to sell, not a single act by the statute of frauds made necessary to a valid sale, was ever done. Law and fact are both against this judgment, and it must be reversed.

*Reversed.*