[No. 4437. Decided April 4, 1904.]

JAMES H. LITCHFIELD, *Respondent,* v. HENRY T. COW-
LEY *et al., Appellants.*[1]

LIMITATION OF ACTIONS — COVENANT TO PAY TAXES — ACTION
ACCRUES WHEN TAXES BECOME DUE. Where the defendant,
having agreed to purchase land of the plaintiff within two
years, covenanted to pay all taxes that might be levied upon the
property during said two years, and defaulted, and the plaintiff
subsequently paid said taxes, the right of action upon the cov-
enant to pay the taxes accrued when the said taxes became due,
and the right of action is barred·after the lapse of six years;
since the contract is not simply one of indemnity and is not
postponed until the plaintiff has paid the same.

Appeal from a judgment of the superior court for Spo-
kane county, Prather, J., entered April 9, 1902, upon
the verdict of a jury·rendered in favor of the plaintiff
after a trial on the merits, in an action upon a contract.
Reversed.

*Blake & Adams,* for appellants.
*Hamblen & Lund,* for respondent.

PER CURIAM.—This was an action brought in the supe-
rior court of Spokane county on the 29th day of January,
1902, by James H. Litchfield, plaintiff and respondent,
against Henry T. Cowley and Henry T. Cowley as execu-
tor of the last will and testament of Lucy A. Cowley, de-
ceased, defendants and appellants, to recover damages for

[1]Reported in 76 Pac. 81.

breach of covenant to pay taxes and assessments levied upon certain real estate situate in the city of Spokane. The cause was tried to a jury. A verdict was rendered in favor of plaintiff for $885.34. Judgment having been entered thereon, defendants appeal.

On the 4th day of December, 1891, respondent, James H. Litchfield, and his wife, Jane A. Litchfield, entered into a written contract with Edith Clara Cowley, who acted on behalf of the above named Henry T. and Lucy A. Cowley (husband and wife). By the terms of this agreement, the Litchfields agreed to convey the above real estate to the Cowleys by a good and sufficient deed of general warranty, free from incumbrances. The Cowleys agreed to pay for such real estate $4,000 on or before December 4, 1893, with interest thereon at the rate of ten per cent per annum, payable semi-annually, said installments of interest being "evidenced by four certain promissory notes, dated respectively December 4, 1891, June 4, 1892, December 4, 1892, June 4, 1893, and December 4, 1893, of two hundred dollars each, said notes being signed by Edith C. Cowley, and payable to James H. Litchfield and Jane A. Litchfield." This contract was signed by the Litchfields and Edith C. Cowley, but it is admitted by the pleadings that the latter party executed this agreement on behalf of Henry T. Cowley and Lucy A. Cowley, now deceased. The Cowleys further agreed "to pay all taxes and assessments that may be levied or assessed upon said property during the said term of two years." By the subsequent agreement of the parties, the time for the performance of this contract was extended two years—that is to say, until January 1, 1895.

The complaint alleges, that on the 17th day of May, 1895, the respondent paid to the county treasurer the

county and city taxes levied upon this property for the years 1893 and 1894, amounting to $226.43; that on the 21st day of June, 1894, an ordinance was passed by the city of Spokane, reassessing such property for street improvements in the sum of $354.75, which reassessment was duly confirmed by said city; that on February 8, 1898, respondent paid said sum of $354.75 to said city; that on the 11th day of March, 1892, the city of Spokane passed an ordinance assessing a portion of said property for $1,024.30 for grading Hillard street, in said city; that on the 19th day of April, 1899, respondent compromised with said city the above assessment by paying the sum of $137.70. The complaint further alleges that the appellants have been often requested to pay said sums of money with interest, but have failed and refused so to do; that respondent filed his duly verified claim and statement for the above demands with the executor of Lucy A. Cowley, deceased, which claim was disallowed. Respondent demanded judgment accordingly.

The appellants demurred to the complaint, and, among other grounds, alleged that the action was not commenced within the time limited by law. The trial court overruled such demurrer, and appellants excepted. The appellants thereupon answered, and, among other defenses, set up the six year statute of limitations. Respondent demurred to this defense. This demurrer having been sustained by the lower court, appellants excepted. It is admitted by the pleadings that the Cowleys did not pay the purchase money for this property, as provided in the contract. The cause went to trial on the issues as thus formulated by the pleadings, and resulted in a verdict and judgment for respondent, as above stated.

The appellants' assignments of error present but one

proposition for the consideration of this court: Was the
respondent's right of action herein barred by the statute
of limitations on the 29th day of January, 1902, when
the present action was begun? Sections 4796 and 4798,
subd. 2, Bal. Code, provide that, an action upon a con-
tract in writing, or liability express or implied arising
out of a written agreement, can only be commenced within
six years after the cause of action shall have accrued,
except in special cases not necessary to be considered in
this connection. The appellants contend that the lower
court committed reversible error in sustaining respond-
ent's demurrer to the second defense, setting up the six
year statute of limitations, on the theory that respond-
ent's cause of action did not accrue until he paid these
taxes and assessments, and that therefore respondent's
right to bring the present action was not barred, under
the provisions of this statute, when this suit was begun.

The argument of appellants, as we understand it, is
based upon the proposition that the covenant of the Cow-
leys to pay these taxes and assessments was primary,
affirmative, and positive in its language, and not second-
ary or collateral; that the respondent could have sued the
Cowleys for breach of this covenant on January 2, 1895,
and recovered substantial damages, without having first
paid such taxes and assessments; that hence this cause
of action accrued at that time. The respective counsel
for appellants and respondent have cited no authority
bearing directly on this question, which seems to be some-
what involved and not free from difficulty. The case
of *Donovan v. Judson,* 81 Cal. 334, 22 Pac. 682, 6 L. R. A.
591, cited by appellants' counsel, was an action to re-
cover on an independent covenant for the payment of the
purchase money named in the agreement for the sale of
real estate. The time of payment was fixed by the terms

of the contract, but it was left indefinite as to the time when the conveyance was to be executed. The court decided, and we think correctly, that the plaintiffs' right to bring suit was barred, under the California statute, after four years from the time fixed for the payment of the purchase money. In that case the promise was made directly in the covenant by the defendant to plaintiffs' intestate to pay a definite sum of money with interest. In the present controversy, the respondent is not suing to recover the purchase money, nor on any promise to pay money directly to him, or to the Litchfields, whom he represents in this transaction.

The respondent presses upon our attention the case of *Post v. Campau*, 42 Mich. 90, 3 N. W. 272, as an authority in point sustaining the ruling of the court below on the question of the statute of limitations, contending that the covenant in question is one of indemnity, not affirmative and positive in terms, and not entitling respondent to sue thereon until he shall have suffered damages by payment of the above taxes and assessments. This authority last cited was an action on a covenant contained in a deed.

"The said parties of the first part for themselves, heirs, executors and administrators, do covenant, grant, bargain and agree to and with the said party of the second part, his heirs and assigns, that they, the said parties of the first part, have not heretofore done, committed, or wittingly, or willingly suffered to be done or committed any act, matter or thing whatsoever whereby the premises hereby granted or any part thereof is, are or shall or may be charged encumbered in title or estate or otherwise."

This deed was made to defendant in error, Daniel J. Campau, by deceased, Theodore J. Campau, and others, of a tract of land, on December 19, 1866. Prior to that

date, Theodore J. Campau's interest in this real estate
was sold on execution, and bid in by the judgment cred-
itors; Theodore failed to redeem. The title under the
execution sale was transferred to Milton H. Butler, who
in 1872 brought ejectment to recover possession; and,
after some five years of litigation, defended by Daniel at
the request of Theodore Campau, plaintiff obtained judg-
ment. When the litigation was ended, Daniel bought up
the title of Butler, paying therefor something over $7,000.
Theodore J. Campau died intestate in 1875. August 18,
1878, the claimant presented the said claim against the
estate of Theodore; it was disallowed by the probate court,
and the claimant then appealed to the circuit court. In
that court judgment was rendered in his favor. Theo-
dore's representatives prosecuted error to the supreme
court. Judge Cooley, who delivered the opinion of the
court, observed that it was not disputed that the out-
standing execution sale created a liability against Theo-
dore J. Campau at the time of his conveyance above
noted. The learned jurist proceeded to remark, further,
"It is contended, however, that his covenant was broken
as soon as made, and that the remedy to recover damages
for the breach was lost by the failure to institute suit, or
to present the claim within the time limited by statute."
The statute of Michigan at that time provided that a
suit upon covenant must be brought within ten years after
the right accrues. The statutory time between the exe-
cution of the deed and the presentation of the claim had
elapsed. In this connection Judge Cooley uses the follow-
ing language:

"As the terms of the covenant sued upon were falsified
by facts existing at the time, a technical breach may be
said to have then taken place; but as no damage followed
from this breach, until the claimant purchased from But-

ler more than ten years afterwards, the rule that the claimant's right of action shall be deemed to have arisen at the delivery of the deed involves this manifest absurdity, that the claimant's remedy was barred before he was damnified—a result that can scarcely be consistent with any just or proper rule of law."

and expresses it as his opinion that, though there was a technical breach of the covenant when the deed was delivered, there was no substantial damage until the claimant paid the above sum of money, and that therefore the statutory limit had not expired when this claim was presented. Just before concluding the opinion, Judge Cooley says:

"So far I have expressed my own views, and have not spoken for any one else. My brethren think that the broad question I have discussed is not involved. They are of opinion that the covenant is special, and that it looks to the future, and promises indemnity for damage that may at any time in the future result from the breach. In this view it is immaterial whether the ordinary covenant against encumbrances would or would not be broken finally, if at all, at the delivery of the deed containing it."

The covenant in this last case seems to have been one of indemnity against incumbrances, rather than one to do specific acts similar to the payment of taxes and assessments that may have been levied between certain periods of time. The language of the covenant in the above deed seems to be general in its terms, whether applied to existing incumbrances, or to those that may arise or become crystallized in the future from a source existing anterior to the execution of the deed of conveyance. Unquestionably, if the covenant involved in the present controversy is to be construed as one of indemnity, the respondent's cause of action for substantial damages did not accrue till he discharged the taxes and assessments mentioned in his com-

plaint. But, on the other hand, if the covenant of the Cowleys in that behalf was positive and affirmative, the present cause of action accrued when it became the duty of the Cowleys to pay such incumbrances or liens specially named in the instrument. Rawle on Covenants for Title (5th ed.), § 74.

The case of *Rector etc. of Trinity Church v. Higgins,* 48 N. Y. 532, appears to have a more direct bearing on the facts involved in the case at bar than any other authority to which our attention has been directed. The syllabus thereof fairly states the points decided:

"A covenant in a lease whereby the lessee agrees to bear, pay and discharge all taxes and assessments which shall be imposed upon the demised premises during the term, is broken when the lessee neglects to pay a tax or assessment duly imposed. It is not simply a contract of indemnity, but by it the tax or assessment, as between the parties, becomes the debt of the lessee. The lessor therefore can maintain an action thereon without first paying the tax or assessment, and as damages he is entitled to recover the amount of such tax or assessment.

"Parties have the right to make a contract contravening the rule that actual compensation will only be given for actual loss, and when the intent so to do is expressed in apt and suitable language courts of justice will enforce it.

"The fact that neither the particular tax or assessment, nor the time of payment, nor the person or corporation to whom payable are stated in the covenant, does not make it one for indemnity merely. That is certain which is capable of being rendered certain.

"Nor is it an objection that there is a risk attendant upon the payment of the judgment without prepayment of the tax or assessment. The lessee can make payment even after judgment, and upon application to the court after such payment the collection of the judgment; except as to costs, will be stayed, and upon payment of costs satisfaction will be ordered."

That able court, on page 537 of the same volume, uses the following language in distinguishing between covenants for indemnity and agreements to do particular acts to obviate damage:

"The rule may be definitely drawn from numerous cases, that where indemnity only is expressed, damages must be sustained before a recovery can be had; but a positive agreement to do an act which is to prevent damage to the plaintiff, will sustain an action where the defendant neglects or refuses to do such act."

Numerous authorities are cited in support of the position of the court in this respect. The principles of law enunciated in that case, as far as we are able to learn, have never been questioned by the court of last resort in New York, but have been sustained by numerous subsequent decisions of the courts of that state. In *Smart v. Smart,* 24 Hun 127, this rule of law was applied to an agreement for the sale of real estate.

It is true, as respondent contends, that no time is mentioned in the contract sued on for the payment of these taxes and assessments, and that the question as to the statute of limitations was not involved in the case of *Rector, etc., v. Higgins, supra.* But the principles of law announced therein are significant, when we come to make the application to the facts in this controversy as presented by the record, in that the covenant of the Cowleys to pay the taxes and assessments on this realty was one looking to the prevention of damage, and not an agreement of indemnity to pay damages that the Litchfields or respondent might suffer by reason of the default of the Cowleys in that regard. Bearing in mind the rule that that is certain which can be made certain, it would logically follow that respondent's cause of action accrued when the above taxes and assessments became due, with-

out regard to the time or dates of actual payment by respondent. These taxes and assessments, except the taxes levied in 1894 against this realty, were due and payable prior to January, 1895. Under our statutes, Laws of 1893, p. 353, § 68, the county treasurer was not authorized to receive the taxes levied in 1894 prior to the second Monday in January following. Laws of 1895, p. 513, § 14, provides that all taxes levied for the preceding year shall be due on or before the 31st day of May in each year succeeding the levy, after which date they shall become delinquent, with certain exceptions unnecessary to mention here. The contract in question was doubtless made when the revenue statute of 1891 was in force, the provisions of which enactment were dissimilar to the law of 1895, with regard to the collection and payment of taxes.

Applying these rules of law to the facts before us, we are of the opinion that respondent's cause of action in the case at bar accrued not later than June 1, 1895; that, as more than six years had elapsed between that date and the bringing of the present action, the statutory bar was complete, and that the superior court erred in sustaining the demurrer of respondent to the second defense of appellants' answer setting up as a defense the statute of limitations.

The judgment of the trial court is reversed, and the case remanded with instructions to overrule such demurrer, and for further proceedings not inconsistent with this opinion.