[No. 7564.]

EMPIRE STATE SURETY COMPANY V. LINDENMEIER ET AL.

1. EVIDENCE—*Lost Writings—Evidence of Loss*—The law does not require direct and positive proof of the loss or destruction of a document, but only such evidence as will raise a reasonable inference of such loss or destruction. Action upon a bond to secure performance of a contract for the construction of a house, according to the plans and specifications of an architect named. The contract provided that the specifications were and should remain the property of the architect. The architect testified that he had made very careful search for them, entirely without success. *Held*, that the loss of the specifications was satisfactorily excused, and the contract, without the specifications, was held properly received in evidence.

But the court note that the action was not founded upon any departure from the plans or specifications, and that the cause could as well be determined without them as if they had never existed.

2. INTEREST—*Exceeding Liability of Surety*—The later authorities, and the preponderance of authority, is to the effect that in an action against the surety for performance of an executory contract, interest may be allowed, even though the effect is to exceed the penalty of the bond. The allowance is made, however, not as part of the debt, but as damages for its detention.

But where the surety has no knowledge of the default a demand must be made, and interest is allowed only from the time of such demand.

3. DEMAND—*Institution of Suit*, is a sufficient demand. Interest from that date, only, is allowed where the creditor is entitled to interest only upon demand, and no demand is shown.

4. SURETY COMPANY—*Character Of—Contracts How Construed*—The doctrine that a surety is a favorite of the law, and that a claim asserted against him is *strictissimi juris* has no application to a bond, executed upon consideration, by a corporation organized to execute such bonds for a profit. Such a corporation is in effect an insurer; its contracts are, as a rule, in terms prescribed by the corporation itself, and should be construed most strongly in favor of the obligee.

5. ——*Contract for Erection of Building—Surety Liable for Liens* —The contractor for the erection of a building agreed to "furnish all materials and do all the work," etc. Defendant became surety for such contractor. *Held*, that defendant was liable for the amount of a lien established against the building for material furnished the contractor, though the owner had not discharged such liens.

*Error to Larimer District Court.*—Hon. NEIL F. GRAHAM, Judge.

Messrs. MURRAY & INGERSOLL, for plaintiff in error.

Mr. J. F. FARRAR, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendants in error on the 11th day of May, 1907, and who were at that time the owners of certain lots and buildings in the city of Fort Collins, entered into a written contract with The Cole-Potter Construction Company, a corporation, for the construction of a theater building on the said premises. Under the contract the construction company was to provide all the materials and perform all the work to be performed under the contract, and specified therein. The work and material were to be in accord with the plans and specifications of the architect, E. H. Moorman, named in the agreement, and which plans and specifications were declared to be a part of the contract. But it was expressly agreed:

"It is further understood and agreed by the parties hereto, that any and all drawings and specifications prepared for the purpose of this contract by the said architect are and remain his property, and that all charges for the use of the same, and

for the services of said architect, are to be paid by the said owner."

The contract price was fixed at the sum of $10,125.00, and the work performed and materials furnished were to be under the direction of the architect who was to furnish monthly estimates, and the owners were to deduct and retain fifteen per cent. of these until the building was completed.

As a condition of the signing of the contract, a bond in the sum of $5,000.00 was required and such bond was furnished by the construction company, with the plaintiff in error as surety.  The present suit is based upon such bond, and judgment was rendered in favor of the defendants in error, in a sum equal to the penalty of the bond, $5,000.00 with interest in the sum of $703.35, the same being computed from the date of the foreclosure of certain mechanics' liens upon the property, which in amounts aggregated a total in excess of the present judgment.

It appears that the construction company defaulted in its contract before the completion of the building, and also that it had not paid for certain materials furnished for use in the building, resulting in the filing and foreclosure of the liens above referred to.

The only errors complained of and discussed in the briefs, and which we are therefore justified in considering, are (a) the admission of oral testimony upon the hearing concerning the plans and specifications referred to in the original contract, the original and no copy of which could be produced at the trial, (b) error of the court in the allowance of the $703.35, interest, and (c) the rendition of judgment without proof of the payment of the lien judgments.

In regard to the first contention, it will be noticed that the plans and specifications were under the contract, to be and remain the property of the architect.  It seems also, that no copy of these were recorded with or as a part of the con-

tract, and also that the original nor a copy was attached to the contract. The architect testifies concerning the disposition and loss of the plans and specifications as follows:

"I did have the original plans and specifications of that building, but I can't find them. I made a search for them very carefully. Q. Who had these plans and specifications? A. The original drawings are always found on file or supposed to be on file, in the architect's office. There were several sets of blue prints made and they were brought to Collins and left on the work. The Cole-Potter Company had one or two sets, and both of the owners had a set. Q. You are unable to find any set of these plans and specifications? A. No copy, not even a blue print. Q. You can find nothing? A. Not a thing. No claim was ever made upon me by The Cole-Potter Construction Company for any extension of time upon the contract. If I remember correctly, this work should have been completed by The Cole-Potter Construction Company under the terms of the contract, September 14, 1907."

W. E. Aiken, one of the plaintiffs, testifies as follows:

"I am one of the plaintiffs on this action. I haven't a set of the plans and specifications for the erection of the Orpheum Theatre as prepared by Moorman, architect. I have made a search for them. I do not know where there is a set. I don't know of one being in existence at this time. I had a set. Mr. Moorman delivered it to me. Q. What did you do with your set? Did you give them to anybody? A. No, sir. I think The Cole-Potter Construction Company had them to use some of the time. I don't know where it is now. I have made an examination for the purpose of finding them and could not."

William Lindenmeier, Jr., another of the plaintiffs, testified concerning the matter in the following language:

"I conducted the business for myself and my father, so far as we were concerned in this matter. We had a set of plans and specifications between us. One set between us. I

don't know where that set is now. It is not in my father's possession.

Q. How do you know it is not in your possession? A. At the time this lien case came up we searched every place, around the store, and around home, and could not find it. I don't know whether there is a set in existence at this time. I don't know what became of our set. Q. Did you give them to anybody? A. I couldn't say where they are, but the probabilities are that The Cole-Potter Construction Company had them."

Cole, president of the construction company, conducted the business for it and he left the country when he abandoned the contract about October 12th, 1907, and his whereabouts was unknown.

It is contended that the plans and specifications were by the terms of the agreement made a part of it, and that the bond was conditioned upon the performance of the contract as a whole, and therefore the plans and specifications must be proved with the same degree of strictness as those parts of the contract and the bond, which are material to the determination of the cause.

There does not appear to have ever been any question between the owners of the property and the construction company, involving the plans and specifications as such, and neither is there any dispute or contention between the parties to this suit in that regard.

In fact, the appellants introduced no testimony upon the trial of this cause at all except a letter between counsel, but for what purpose it does not appear, as it seems to be wholly foreign to any question involved.

Counsel cite many authorities in support of their contention, but these are not applicable here. The rule of this court in this respect seems to be:

"That a particular instrument existed, is the most material inquiry; the fact of its existence and the contents of it are matters to be tried by the jury; the loss of it must be made out

to the satisfaction of the court. The law exacts nothing un-
reasonable in such a case. If parol proof of the loss estab-
lishes the fact with reasonable certainty, that is sufficient. No
precise rule can be safely laid down upon this subject, further
than this, that diligent search and inquiry should be made of
those places or persons in whose custody the law presumes the
instrument to be."—*Hobson v. Porter,* 2 Colo. 28; *Londoner
v. Stewart,* 3 Colo. 47; *Hetson v. Davenport,* 4 Colo. 169.

The law does not, however, require direct and positive
evidence of the loss or destruction of the document, but re-
quires only such evidence as will raise a reasonable inference
of loss or destruction.—17 Cyc. 543.

But there is no contention here that loss by reason of the
contractors default, was occasioned by failure in any respect
upon the part of the contractors, to comply with the plans and
specifications, but only because the building was not completed
within the time agreed in the contract otherwise provided, and
because of failure to pay for the materials furnished, as therein
agreed. Beside, in the first paragraph of the contract it is
provided: .

"This does not include any work or material in front of
entrance of foyer, as shown on the drawings and described in
the specifications prepared by E. H. Moorman, architect,
which drawings and specifications are identified by the signa-
tures of the parties hereto, and become hereby a part of this
contract."

This identification by the signatures of the parties, when
taken in connection with the testimony of the architect above
recited, would clearly indicate that the plans and specifications
were not to attach to the contract, though to be construed as
a part of it, but were to remain with and as the property of
the architect. Indeed, no copies appear to have been made
except blue prints unidentified, and for use in construction, and
therefore the architect was in fact the only person who ever
had possession or charge of them and his testimony as to loss
of such plans seems to be satisfactory.

While it appears that the owners subsequently entered into another contract for the improvement of certain store buildings in front of the opera house, yet the testimony is clear and not disputed that no claim is made in this suit for loss occurring by reason, or on account of such subsequent contract, or in the making of such improvements. Indeed the testimony referred to as being improperly admitted, refers only in an inferential way to the plans and specifications, and the cause could be as well determined, if there never had been any specific plans and specifications. There was no error in the admission of the contract exclusive of the plans and specifications referred to therein.

The next question raised by the appellant is that it was error to allow interest ·to the plaintiffs, thereby making the total amount of recovery in excess of the penalty of the bond which was $5,000.00. The damage sustained by the plaintiffs by reason of the default of the contractors, as appears from the testimony, including the amount of the judgments for material furnished by the material men, and after making all proper deductions, was in excess of the amount of the judgment in this case, including the interest allowed. This judgment was for $5,000.00 so limited by the penal sum of the bond, and $703.35 additional as interest from the date of the lien judgments to the time of the rendition of judgment.

The question of interest in such cases, is one concerning which there has been much conflict of authority. It is a general rule, and well settled, that sureties are liable only to the extent of the penalty of the bond. But the later and apparently preponderance of authority in this country, is to the effect that interest may be allowed from the time of the default, even though this may make the judgment in excess of the penalty named in the bond, not, however, as a part of the debt for which he originally became responsible, but as damages for its detention.

It was said in *Bank of Brighton v. Smith*, 90 Am. Dec. 144 (Mass.) : "There is a plain distinction to be observed be-

tween cases in which interest is given by way of damages, and those in which it constitutes a part of the debt, as it does in contracts in which there is a promise to pay interest. As a general rule, in all cases in which a debtor is in default for not paying money in pursuance of his contract, he is liable for interest thereon from the day of his default, and when a demand is necessary to put the debtor in fault, interest is to be given only from the demand."

In *Goff v. United States,* 22 App. cases Dist. Columbia 536, the court quoting from a former opinion by that court said:

"We think it may be stated as the general rule of the common law of our country, different, it is true, from the former rule in England prior to the statute of 3 and 4 William IV., chap. 42, but perfectly well settled with us, 'that if a debt ought to be paid at a particular time, and is not then paid, through the default of the debtor, compensation in damages equal to the value of the money, which is the legal interest upon it, shall be paid during such time as the party is in default,' sec. 1, American Leading Cases, 1616, where the cases upon the subject are collated and discussed. And this rule has received the approval of the supreme court of the United States.—*Loudon v. Taxing District,* 104 U. S. 771, 26 L. Ed. 923; *Chicago v. Tebbetts,* 104 U. S. 120, 26 L. ed. 655; *Young v. Godbe,* 15 Wall. 562, 21 L. Ed. 250; *Curtis v. Innerarity,* 6 How. 146, 12 L. Ed. 380. It is true that in order to be allowed, it should be claimed in the declaration; but when it is so claimed there can be no doubt of the right of a plaintiff, upon a proper showing, to recover interest as well as principal."

This doctrine was asserted in the case of *Tazwell v. Saunders,* 13 Grattan (Va.) 354, wherein the court entered upon an extensive review of the authorities at that time, both American and English. See also 32 Cyc. 122 and authorities cited.

But it seems from these authorities that interest must be claimed by the pleadings and that it may be computed only from the time of the demand in case demand may be necessary, and not from the time of the default. Demand in this case would appear to be necessary, for it is not a case where the surety would be likely to know of the default in the absence of notice of that fact.

In the complaint in this action, there is an allegation that demand has been made and refused and which is admitted by the answer, but the date of such demand is not alleged and there is no proof upon that point. The authorities seem to agree that the institution of the suit is a sufficient demand, and interest has accordingly been computed from that date. Therefore, in the absence of an allegation or proof of demand prior to the commencement of the suit in this case, the court should have allowed interest only from that date, August 23rd, 1910.

It is contended by appellant that no judgment may be rendered in favor of the plaintiff in this case, other than for a nominal sum, for the reason that the plaintiff had not at the time of trial paid the judgments and discharged the liens theretofore established. The defendant is a surety company engaged in the business of furnishing surety bonds, and must be considered in the light of the rule of construction as to strictness in such cases, differing from that of individual sureties.

"Generally speaking, a contract of suretyship by a surety company is governed by the same rules as the contracts of other sureties, but some distinctions are made by the courts in construing such contracts. The doctrine that a surety is a favorite of the law, and that a claim against his is *strictissimi juris,* does not apply where the bond or undertaking is executed upon a consideration, by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves 'surety companies,' their business is in all essential particulars that of insurers. Their con-

tracts are usually in the terms prescribed by themselves, and should be construed most strongly in favor of the obligee."— 32 Cyc. 306. An investigation of the authorities cited by the author, will disclose that this text is a fair statement of the modern rule.

Counsel for appellant cite no case which seems to sustain their contention except that of *Henry v. Hand,* 36 Ore. 492, though there are others sustaining this view. But this contention is not sustained by the weight of authority, neither does it appear to be supported by sound reason or justice. These authorities were extensively reviewed and the doctrine rejected in the case of *Stoddard v. Hibbler,* 156 Mich. 335, and in which it was well said :

"The reasoning of these cases does not commend itself to the court. In view of the statute of this state, which entitles laborers and materialmen to liens, it seems to us a most narrow construction to say that, when the contractor agrees to furnish all labor and material necessary to build and complete a house, he may comply with this requirement by simply placing the material on the ground, engaging the labor, and leaving the owner to pay for it, or to permit a lien to stand against his property. This is not furnishing the material in any substantial way, and we find that other courts have taken a very different view from that expressed in the cases referred to."

That court cited as sustaining the view there held, the case of *Kiewit v. Carter,* 25 Neb. 460, wherein it was said :

"The plaintiff in error contends that the bond given by him and others does not provide for mechanics' liens; that he is a mere surety, and is not bound beyond the strict terms of the bond. The second paragraph of the contract provides that Kough is 'to furnish all the material, such as lumber, hardware, brick, lime, sand, paint, oils, etc., as may be necessary to complete said house according to the plans and specifications.' If Kough failed to pay for such materials therefor, and the plaintiff below, was required to pay the same, Kough

paid for these articles, no mechanics' lien would have been filed. The lien is not a cause, but a consequence, flowing from the non-payment of the materials. In other words, it is merely a mode of enforcing payment for materials used in the erection of a building."

Also the case of *Closson v. Billman*, 161 Ind. 610, wherein it was held:

"When we look to the contract, however, it is plainly provided that he is to furnish the lumber, and the provision concerning the payment of $250 on presentation of receipted bills for materials furnished and delivered upon the lot, makes it clear that it was contemplated that said Worley should pay for the materials he was to furnish. The bond provides that Worley is to build, construct, and complete the residence 'according to his contract,' and it was as much his duty to deliver the house free of liens on account of materials as it was to use materials which belonged to him. To hold, in the face of the bond and contract, that the construction and completion of the building in accordance with the plans and specifications was a compliance with the bond, although the owner would be compelled to pay out large sums in excess of the amount stipulated in the contract to discharge liens for the purchase price of materials, would be to keep the word of promise to the ear, but break it to the hope."

In *Hayes v. Lane*, 116 Ky. 566, the court took the same view and it was there declared by the court:

"Under the contract the sureties bound themselves that Lane would furnish the material and build the church 'in strict accordance with the terms and conditions of said contract,' * * *. The sureties guaranteed that Lane would furnish the material and erect the building. In the erection of the building, Lane had to perform the labor himself, or to employ some one to do it. It follows that the sureties guaranteed that the necessary materials and labor would be furnished to erect the building. But it is urged on behalf of the sureties that the terms of their bond were complied with when

the material and labor were furnished; that their contract did not require them to protect the church against the cost of the material and labor. Reduced to the last analysis, their claim is that Lane complied with his contract by furnishing the material and labor, although the church was compelled to pay for such part for which Lane failed to pay. Lane did not comply with his contract when he furnished the material and labor, unless he paid for it, or released the building from liability therefor."

The conclusion we have reached is quite well stated in *Friend v. Rolston*, 35 Wash. 422, where the court said:

"The learned counsel for appellant cites numerous authorities with reference to the non-liability of sureties on bonds or covenants of indemnity 'to save and keep harmless the obligee from certain outstanding debts, or that the party indemnified shall not sustain damage incurred through the omissions or acts of the principal, etc., until the obligee shall have paid or discharged such debts, or may have otherwise sustained financial loss.—*Miller v. Fries*, 66 N. J. L. 377, 49 Atl. 674. But there is a marked distinction between covenants of that description and agreements that the obligors shall perform specific acts.—*Litchfield v. Cowley*, 34 Wash. 566, 76 Pac. 81; *Wright v. Whiting*, 40 Barb. 235. The covenant in the building contract on the part of the contractors with Mrs. Friend is, as between them, equivalent to a direct promise to pay for materials used in the construction of the building, and a breach of the contract occurred when the contractor suffered the obligation to become a charge on her property; at least, she was entitled to treat it as a breach. It may be true that she was not obligated to do so; that she could have waited until the lien had become fixed and determined by judgment against her property, and treated that as the breach of the bond, thus escaping the onus of establishing, at the trial, the validity of such lien and the amount of the indebtedness, but she was not obliged to delay action in that behalf. She could treat the failure of the contractors to keep her property free from such

incumbrance as a breach of the contract. Therefore, the position of appellant's counsel that this action was prematurely brought is untenable."

The contract in the case at bar provided that:

"Article I. The contractor shall and will provide all the materials and perform all the work for the concrete, stonework, brick-work, plastering, carpenter work, tin and galvanized iron work, cement work, iron work, roofing and exterior cementing of stage building."

The bond provided that: "The conditions of the above obligation is such: That whereas The Cole-Potter Construction Company has this day entered into an agreement with W. E. Aiken, William Lindenmeier, and William Lindenmeier, Jr., to furnish the materials and labor and construct a theater building on property to be designated in the city of Fort Collins, Colorado, in accordance with certain plans and specifications furnished by F. H. Moorman, architect, for the sum of ten thousand, one hundred and twenty-five dollars ($10,-125.00), and whereas the said The Cole-Potter Construction Company has agreed to furnish all of said materials and to do all the work in the construction of said building in accordance with said plans and specifications which are referred to and made a part hereof, as though fully and at length set out herein.

Now, therefore, if the said The Cole-Potter Construction Company shall well and truly keep and perform each and every of the covenants and agreements in said contract contained on its part to be kept and performed, then this obligation to be null and void; otherwise to remain in full force and effect."

It was as much the obligation of the contractors and their surety under this agreement and bond, that the materials should be paid for as that they should be furnished. In fact the value of these materials was clearly included within the consideration named in the contract, the performance of which the bond was given to secure. The contractors failed to make

these payments, liens were claimed, established and foreclosed and the property of the plaintiffs ordered to be sold in payment of the judgments so rendered.

The bond was security for these payments and it would be nothing short of manifest injustice to hold that the plaintiffs must have paid these judgments before they can maintain action on the bond. Their property had been decreed to be sold in payment of the sums so secured by the bond.

The district court is instructed to so modify the judgment as to compute interest on the amount of the penalty on the bond from the day of the institution of the suit, and as so modified, the judgment is affirmed.

*Modified and affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.