No. 12,714.

HOLLIS *v.* COMMERCIAL NATIONAL BANK OF SALIDA.

(13 P. [2d] 262)

Decided June 20, 1932.

Mr. FRANK L. FETZER, Mr. PIERPONT FULLER, for plaintiff in error.

Messrs. BARTELS & BLOOD, Mr. WALTER W. BLOOD, Mr. ARTHUR H. LAWS, for defendant in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

THE bank sued Hollis and two others, M. M. Miller and Harry T. Bowen. There was voluntary dismissal as to Bowen. Judgment went against Hollis and Miller, and Hollis seeks review.

It appears that at all times material to this inquiry

Hollis was president of the Drovers Cattle Loan Company, a corporation; that October 19, 1925, Miller executed his note to the cattle company for $6,500, and gave as collateral security a certificate for 125 shares of stock of the Stockyards National Bank of Denver; that on the same day the cattle company made its note to the bank here for $6,000, attached the Miller note and bank stock as collateral, forwarded it to the bank, drew for $6,000, and its draft was paid. It seems that for a year or more before the incident of the Miller note the cattle company had an arrangement with the bank to carry its paper up to $75,000, in items as sent, and the Miller note was one of many transactions which entered into the use of such credit.

The cattle company failed and did not pay its note, Miller did not pay and the bank stock proved to be worthless. It was sought to hold Hollis and Bowen personally, on the theory, as the court found, that in establishing credit with the bank in behalf of the cattle company, they promised that only good and well secured notes would be sent to the bank; and that they had knowledge at the time the Miller note was sent the pledged bank stock was practically valueless.

It further appears that one Myerson, assistant secretary-treasurer of the cattle company, who handled its notes and discounts, on his own initiative, and without the knowledge of Hollis or Bowen, sent the Miller papers to the bank; and that of the personnel of the cattle company, only Myerson knew about it. But the court held that since at the inception of the credit arrangement Hollis had led the bank directors to believe that only "gilt-edge" notes would be sent, and as the Miller note and its collateral were not good, Hollis should be held, as in fraud, and adjudged accordingly.

The only evidence of any representations made by Hollis was of a letter claimed to have been written by him to the bank, or one Basore, its then president. This letter was said to have been of date when the bank was

considering the matter of discounting the cattle company's paper, and to have influenced the bank's favorable action. The letter was not produced, and error is assigned to the reception, over Hollis' objection, of secondary evidence of its contents. Only the cashier of the bank testified about the letter and gave its purport. Substantially his story was that at a meeting of the board of directors of the bank when credit to the cattle company was being discussed (the witness was not a director), he heard Basore and the other directors speak of a letter from Hollis, but he did not learn whether the letter was addressed to the president personally or to the bank for the president's attention; that he heard the letter read and saw the signature, and that it bore Hollis' name as president, but he could not say whether the letter was written on the cattle company's letterhead or that of a bank of which Hollis was also president, and the letter could not be found in the bank; that it was a letter over which Basore would have the right of custody, as the cashier testified, and that the last time he saw the letter it was in possession of the president; that Basore ceased to be president of the bank in 1926, but there was no showing as to where the former bank president was at the time of the trial, or that any effort was made to learn from him whether he had the letter or what he knew of its disposition.

In the circumstances we think the court erred in receiving the secondary evidence. The search for the letter did not conform to the requirements of the rule. *Wells v. Adams,* 7 Colo. 26, 1 Pac. 698; *Billin v. Henkel,* 9 Colo. 394, 13 Pac. 420. The view the court took of the case made this letter all important, as was the attitude of counsel for the bank as the trial proceeded. It is clear that the letter was in possession of the former president of the bank when last seen by the cashier witness, yet he did not inquire in that quarter and Basore was not called as a witness. Search should have been made where the letter was most likely to be found. *Billin v. Henkel,*

*supra.* In *Empire Company v. Lindenmeier,* 54 Colo. 497, 131 Pac. 437, we announced that "No precise rule can be safely laid down upon this subject, further than this, that diligent search and inqury should be made of those places or persons in whose custody the law presumes the instrument to be." In 2 Jones on Evidence (2d Ed.) §817, it is said: "While an honest and diligent search is sufficient, there is no reasonably certain proof of the loss of a writing until it appears, by their own testimony, that it is not in the possession of any of those who might reasonably be supposed to possess it. The testimony of the last custodian of the paper or record should be offered, and, if dead, his representative or successor should be called. Furthermore, if the paper is so traced that possession may be in either of two persons, both should be sworn before the introduction of secondary evidence is allowed.

Defendant in error does not controvert this principle, but argues on review that the letter was not material to its cause. The record unmistakably discloses that the court based its judgment against Hollis on representations said to have been made by him during negotiations between the cattle company and the bank for credit, and since the purported letter was the only evidence of any representations whatever, we are persuaded that it was a controlling factor. Error is manifest.

Let the judgment be reversed and the cause remanded.

Mr. Chief Justice Adams and Mr. Justice Burke concur.